UNITED STATES, Appellant,

v.

James H. SMITH a/k/a Michael A. Smith,
Appellee.

No. 9393.

District of Columbia Court of Appeals.

Argued Oct. 7, 1975.

Decided March 25, 1976.

------◆------

Hamilton P. Fox, III, Asst. U.S. Atty., with whom Earl J. Silbert, U.S. Atty., John A. Terry, Richard L. Cys and Robert M. McNamara, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Frederick H. Weisberg, Washington, D. C., for appellee.

Before REILLY, Chief Judge, KELLY, Associate Judge, and REVERCOMB, Associate Judge, Superior Court.*

REILLY, Chief Judge:

This is an appeal by the government from an order of a trial judge which, if permitted to stand, would require the courts of this jurisdiction to determine in advance of trial whether a first offender has a right not to be prosecuted for the crime with which he is charged. This case comes before the court in a somewhat unusual context.

The appellee (referred to herein as the "defendant") was arrested and thereafter charged by information on March 8, 1974 with possession of marijuana—an offense defined as a misdemeanor by D.C.Code 1973, § 33–402. At that time, according to his counsel on appeal, the United States Attorney had adopted a practice known to the bar (but never officially promulgated) as "first offender treatment", a program diverting from the criminal trial process the prosecution of young people without prior police records accused of some minor misdemeanor [1] not involving the use of force or violence.

Under this practice, if the prosecutor was satisfied that a person charged genuinely regretted his illegal conduct and was willing to comply with an informal educational program intended to instill in him a respect for the rule of law, he would not bring such person to trial but would enter a nolle prosequi. For such treatment to meet its goals, considerable discretion would have to be exercised in each case. Obviously some offenders because of attitude, character, environment or some other factor, would not be impressed by such prosecutorial efforts at reform.

When first awaiting trial, the defendant here did suggest "first offender treatment" but was told it would not be extended to him because he was the subject of a grand jury investigation in an unrelated matter. Thereupon, he moved to dismiss on grounds that the criminal penalties for possession of marijuana violated the Eighth Amendment prohibition against cruel and unusual punishment. Such motion was granted by the trial court in an order entered May 8, 1974. On appeal, this court reversed the dismissal order and remanded the issue for trial.[2] The defendant then filed a motion seeking to compel the government to present testimony as to why he was not being granted "first offender treatment."

The motion stated that after the case was remanded and set for trial, defendant's counsel requested such treatment for his

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. Apparently the possession of marijuana was one of the offenses fitting into this category.

2. Consolidated with *United States v. Thorne*, D.C.App., 325 A.2d 764 (1974), and several other appeals from identical orders of dismissal by the same trial judge pursuant to motions challenging the constitutionality of the Criminal Code's prohibition of marijuana.

client by the United States Attorney, but was informed that it was the policy of that office to deny such treatment to defendants who had chosen to litigate any issues in their case. As this defendant had previously filed a motion to dismiss, he was therefore ineligible for the program. The grounds of the motion were that such a policy violated the rights of defendants to assert colorable legal claims in their defense, and requested the court to compel the government to provide a statement of "objectively verifiable reasons."

At the motions hearing it developed that the existence of such a policy was something that defense counsel gleaned from an informal conversation with an Assistant United States Attorney, in which the latter was sounded out as to the possibility of first offender treatment. The government took the position that the court lacked jurisdiction to inquire into this program and declined to provide a statement or evidence with respect thereto.

In a written opinion, the trial court found that defendant's motion and his counsel's testimony raised "substantial claims of unconstitutionality in the treatment of him by the United States Attorney" and consequently the court's jurisdiction was properly invoked. The government was ordered to "make available such witnesses and documents as may be needed for a judicial determination of whether any policy or practice of the United States Attorney relating to the first offender pro-

gram had denied this defendant his constitutional rights." When the government refused to comply, the information was dismissed. The only issue on appeal is whether the appellee's motion and supporting testimony provided an adequate jurisdictional basis for the trial court.[3]

The challenged "first offender" program is one of several pretrial diversion procedures[4] developed by the prosecutor's office to reduce the court docket, conserving office manpower for more serious offenses, and to fashion specialized rehabilitative regimens that may be more appropriate than imprisonment.[5] Unlike similar programs in other jurisdictions, this practice is mandated neither by statute nor court rule, and owes its existence and operation solely to prosecutorial discretion.[6]

The motion asserts that first offender treatment is routinely denied to any defendant who litigates an issue in his or her case, and that such a policy therefore has an unconstitutionally discriminatory effect upon individuals who choose to exercise their legal rights. In the opinion below, the court, equating the matter with a policy which discriminated against a racial or ethnic minority, ruled that the testimony supporting the motion made out a prima facie case of denial of equal protection.

■■ It is fundamental that to support a defense of selective enforcement or discriminatory prosecution, the defendant bears a heavy burden of showing that the

---

3. This asserted prior request is evidenced solely by the testimony of counsel, and the court below made no mention of it in the opinion and order appealed from. The issue before this court, therefore, is restricted to the constitutionality of the policy with respect to first offenders who choose to litigate issues in their case. The practice regarding first offenders who are the subject of an unrelated grand jury investigation is not challenged here.

4. The United States Attorney's Office also maintains criminal diversion programs for narcotics offenders and for defendant suffering from alcoholism.

5. *See Generally* Note, *Pre-trial Diversion from the Criminal Process*, 83 Yale L.J. 827 (1974).

6. In the normal course, acceptance into the program and the subsequent dismissal of the case are not dependent upon the power of a judge and are administered free from court proceedings. *Compare* diversionary procedures in New Jersey, which must meet the approval of the Supreme Court of New Jersey, N.J.R.Crim.P. 3.28, and in Pennsylvania, which authorize a hearing before a judge on a motion for pretrial diversion. Pa.R. Crim.P. 175, 178. *See Pre-trial Diversion from the Criminal Process*, note 5 *supra* at 839–40.

government's selection of him for prosecution has been based upon some form of invidious or otherwise impermissible form of discrimination, or is arbitrary and capricious. *Oyler v. Boles,* 368 U.S. 448, 82 S. Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974). The doctrine of separation of powers requires that the prosecutor, as an arm of the executive, be permitted to operate free from judicial fetters, and the scope of review of the prosecutor's exercise of discretion is narrow indeed.[7]

■ There is no question that a prosecutorial policy which singles out members of certain ethnic, religious, or racial groups abridges the rights of those groups and must be struck down. In *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886), a San Francisco ordinance requiring laundries to be located in buildings of brick or stone was being enforced almost exclusively against Chinese-owned laundries.[8] The Supreme Court found such a practice unconstitutional, ruling that any law, although constitutional on its face, cannot be administered "with an evil eye and an unequal hand." *Yick Wo v. Hopkins, supra* at 373–74,[9] 6 S.Ct. at 1073.

■ Likewise, any policy which operates unfairly against persons with particular political beliefs or allegiance must fall. In *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973) (en banc), the defendant was charged with failure to possess draft registration cards in violation of 50 U.S.C.App. § 462, and he moved to dismiss on the grounds that the government sought the indictment for the improper purpose of deterring his participation in political dissent. The court ruled that the defendant was entitled to be heard on such a claim, holding that discrimination based upon the exercise of protected rights is forbidden.[10] *See also, United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972).[11] In the recent case of *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the defendant was accused of the misdemeanor of assault with a weapon and chose to exercise a statutory right to a trial de novo on appeal. While the appeal was pending, the prosecutor obtained an indictment on a felony count covering the same transaction. The Supreme Court ruled that in bringing the felony charge with its potentially longer sentence, the prosecutor had contravened the defendant's due process right to pursue

---

7. Former Circuit Judge Burger in *Newman v. United States,* 127 U.S.App.D.C. 263, 264, 382 F.2d 479, 480 (1967) said:
   Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.

8. The ordinance in *Yick Wo* provided that laundries in buildings not made of brick or stone could operate only with the consent of a board of supervisors. Nearly all of the 320 laundries in San Francisco at the time were in wooden buildings, and a substantial majority of the total were owned by Chinese. Yick Wo and 150 of his countrymen were arrested for doing business without obtaining the necessary consent, while not a single non-Chinese was arrested although a considerable number operated laundries in wooden structures without the consent of the board.

9. Although *Yick Wo* concerned abuse of discretion in the administration of a health ordi-

nance by a licensing board, the underlying principle has been held to apply to activities of prosecutors and police officials. *See Two Guys from Harrison-Allentown Inc. v. McGinley,* 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *United States v. Falk,* 479 F.2d 616, 618–19 (7th Cir. 1973) (en banc) (collecting cases).

10. And, just as discrimination on the basis of religion or race is forbidden by the Constitution, so is discrimination on the basis of protected First Amendment activities, whether done as an individual or, as in this case, as a member of a group unpopular with the government. *United States v. Falk, supra* at 620.

11. In this case, the defendant, who had participated in a census resistance movement, was prosecuted for refusing to answer questions on a census form. The conviction was reversed when the government refused to produce evidence to rebut the defendant's showing that the government's investigations were restricted to individuals who had participated in demonstrations and activities against the census.

his appeal without fear of official retaliation.

■ We have no quarrel with the trial court's ruling that a policy intended to deter defendants from exercising their legal rights cannot be tolerated in the name of prosecutorial discretion. We disagree, however, with the court's finding that the defendant has made an adequate showing that the policy questioned· here has any such objective or effect. The record makes clear that if a defendant applies for, is accepted into the program, and successfully completes the requisite activities, charges are dropped without his having to go to court, and no conviction or criminal record results.

The beneficiary of such a disposition of charges against him can scarcely be said to be deterred from exercising his right to defend himself, for, by dismissing such charges, the government has done away with any reason for him to do so. Should the prosecutor deny first offender treatment to a defendant, the latter is in no way barred from then invoking his legal rights and defenses in any manner he chooses. An accused is not prejudiced, therefore, by any official policy that no issues be litigated while his application for diversionary treatment is pending.

Appellee makes the additional and somewhat broader argument that any government policy is unconstitutional if it encourages defendants to waive their constitutional rights. He relies principally upon some language in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), a case invalidating a provision of the Federal Kidnapping Act (18 U.S.C. § 1201(a)) authorizing imposition of a death

sentence only upon recommendation in a jury verdict.[12] The effect of this provision, the Court held, is to deter defendants from exercising their right to plead not guilty and demand a jury trial inasmuch as a defendant who pleads guilty or elects to be tried by a judge risks at most a life sentence. The opinion· states:

> The inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right to plead not guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional. [390 U.S. at 581, 88 S.Ct. at 1216; footnote omitted.]

The Court went on to say that the deterrent effect need not rise to the level of coercion, but such effect could be inferred if the statute "needlessly encourages" the waiver of constitutional rights. [390 U.S. at 583, 88 S.Ct. 1209.]

These comments caused some legal scholars to speculate that the *Jackson* opinion cast a shadow upon the constitutionality of plea bargaining because this practice induces defendants to waive their right to present a defense in exchange for the acceptance of a guilty plea on some lesser charge.[13]

Even though holdings disapproving plea bargaining would not be entirely dispositive of the issue before the court in the

---

12. Prior to an October 24, 1972 amendment, this Act provided:
   Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnapped . . . and held for ransom . . . or otherwise . . . shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the

verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.

13. *See, e. g.,* Note, *The Unconstitutionality of Plea Bargaining,* 83 Harv.L.Rev. 1387 (1970).

present case,[14] post-*Jackson* opinions of the Supreme Court have set at rest such misgivings as to the constitutionality of this venerable practice. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

In *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Supreme Court noted that *Jackson* must not be read as deeming unconstitutional any government policy which encourages defendants to give up some rights in exchange for expected leniency, and stated:

> *Jackson* did not hold, as subsequent decisions have made clear, that the Constitution forbids every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights. [412 U.S. at 30, 93 S.Ct. at 1984.]

■ The pertinence of this decision to the case at bar is apparent. If it is permissible, in plea bargaining, to induce a defendant to plead guilty and waive his right to trial, *a fortiori* no substantial constitutional question is presented when a prosecutor offers to drop all charges provided the accused conforms to certain conditions, including, *inter alia,* foregoing the filing of any motions or pleas in defense.

Accordingly, the challenged order of the court is set aside, for it is based on an erroneous limitation on the scope of prosecutorial discretion. In view of the circumstances with respect to this particular appellant, however, nothing in this opinion should be read as precluding the United States Attorney from exercising such discretion in this posture of the case with respect to according diversionary treatment.

*Reversed and remanded for proceedings not inconsistent with this opinion.*

14. Unlike plea bargaining, the first offender program involves no guilty plea and leaves the defendant without a conviction record. Moreover, the nolle prosequi is entered in the first offender program free from judicial scrutiny, whereas a guilty plea cannot be accepted unless the trial judge is satisfied that there is a factual basis for the plea. Super. Ct.Cr.R. 11.