**UNITED STATES, Appellant,**

v.

**Nina K. SCHILLER et al., Appellees.**

**No. 79–1206.**

District of Columbia Court of Appeals.

Argued March 27, 1980.

Decided Oct. 21, 1980.

---

Michael W. Farrell, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, C. Madison Brewer, and Mary Ellen Abrecht, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellant.

Ladd B. Leavens, Public Defender Service, Washington, D.C., with whom Maxine Auerback, Public Defender Service, and Russell F. Canan, Jeffrey B. O'Toole, Washington, D.C., and Stephen B. Bright, Washington, D.C., appointed by the court, and Robert Avakian, pro se, were on the brief, for appellees. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance for appellees.

Daniel P. Sheehan, Boulder, Colo., Victor M. Goode, New York City, and Paul Harris, were on the brief for amicus curiae.

Before GALLAGHER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Of seventeen appellees, eight were indicted in a thirteen count indictment, and the remaining nine appellees were charged in a second nine count indictment.

Upon appellees' request that the two indictments be consolidated, the government sought and obtained a third superseding

indictment charging all seventeen appellees on all counts of a twenty-six count indictment. Appellees thereupon moved to dismiss all charges on the ground that the government's action presented a realistic likelihood of prosecutorial vindictiveness. After a hearing, the court dismissed the superseding indictment in its entirety. Upon review of the record, we conclude that the order of dismissal was error. Accordingly, we reverse.

## I

On June 20, 1979, the grand jury returned a fifteen count indictment against eight of the appellees (hereinafter the "Schiller" appellees), charging thirteen counts of assault on a police officer with a dangerous weapon, D.C. Code 1973, §§ 22–505(b), –105, one count of assault on a police officer, D.C. Code 1973, §§ 22–505(a), –105, and one count of rioting, D.C. Code 1973, § 22–1122(b). On the same day, the grand jury returned a separate eleven count indictment charging the remaining nine appellees (hereinafter the "Avakian" appellees) with nine counts of assault on a police officer with a dangerous weapon, one count of assault with a dangerous weapon, and one count of rioting.

All charges allegedly grew out of a January 29, 1979 demonstration protesting the visit of Vice Premier Teng Xiao Ping of the People's Republic of China with the President of the United States. The demonstration was sponsored by the Revolutionary Communist Party and the Committee for a Fitting Welcome. When the demonstration turned violent, the police began making arrests. Many of the charges against these persons were dismissed leaving the present seventeen appellees.

The nine Avakian appellees were arraigned before Judge Carlisle Pratt on July 3, 1979. Similarly, the Schiller appellees were arraigned on from three to five counts of their fifteen count indictment before Judge Leonard Braman on July 5, 1979. Judge Braman found the remaining counts in the Schiller indictment to be defective [1] and correctable only by reindictment.

At the July 5, 1979, arraignment before Judge Braman, the appellees informally announced their intention to call approximately seventy-five defense witnesses, and notified the court that the appellees would be seeking by motion to join all seventeen appellees and to consolidate the two indictments for trial. Judge Braman asked appellant's position. Appellant responded that it had considered requesting a single indictment, but that during the grand jury investigation "it became obvious that there were two different types of cases and these were indicted separately. . . ."

On July 17, 1979, appellees filed a written motion requesting that all defendants be tried together. Appellees, in their motion, waived "any prejudice to their particular case" that would result from a consolidated trial. In its response, the government stated that a primary purpose of two indictments initially had been "to minimize prejudice to the defendants who[m] we had the least amount of evidence." While not opposing the request, the government asserted that it would be impractical and prejudical to try the two existing indictments together, and that it, therefore, "intend[ed] to seek reindictment" so that all seventeen appellees would be charged as codefendants in one new indictment.[2]

---

1. The court found the language of the indictment to be ambiguous to the extent that it was not clear whether the grand jury intended to charge all defendants with all counts in the indictment.

2. Appellees seek to make an issue of the government's statement that it intended to seek reindictment of appellees, when in fact such reindictment had already been obtained. We, however, do not agree that this fact is one

which should, under the circumstances of this case, be used in the cumulative process of determining the existence of a realistic likelihood of prosecutorial vindictiveness. We do not feel that every failure of a prosecutor to tell a defendant in advance what his next step in regards to that defendant well be, in any way chills that defendant's exercise of his constitutionally protected rights. This is especially true, where, as in this case, the essence of the defendant's complaint is not the fact of rein-

The revised indictment charged all of the appellees together and included additional charges against each individual appellee which, in turn, involved additional penalties.

Appellees were arraigned on the superseding indictment on August 13, 1979. On August 27, appellees moved to dismiss the superseding indictment, contending, *inter alia*, that appellant had responded vindictively to their motion for consolidation of trial in violation of appellees' due process rights.[3] In opposition to appellees' motion to dismiss, appellant urged that if all of the accused were to be tried jointly, the government was entitled to prove that each was acting in concert with others. This required aiding and abetting counts as to all charges which were not present in the two initial indictments. It was stated:

> [W]hen the appellees asked for joinder so that they could emphasize their common ground and their common defense to all charges, the government gave them what they asked for. The new indictment holds them all accountable for all the assaults to which they plan their common defense.

At a status hearing on October 17, 1979, Judge Pratt ruled that due process required a return to the same level of jeopardy as had existed in the original indictments, thus granting in part appellees' motion to dismiss the superseding indictment. Rather than undertake selectively to dismiss counts of the new indictment, however, the trial court advised appellant that it could either advise him of a manner in which he could enter selective dismissals of the superseding indictment and thereby effect a return of the status quo, or reindict the case consistent with the spirit of his ruling to eliminate the appearance of vindictiveness.

Appellant subsequently advised the court that it would not be submitting a revised indictment. On November 14, 1979, the court entered an order dismissing the superseding indictment. This appeal followed.

## II

■ ■ With regard to the exercise of the rights of an accused, due process of law requires that even the appearance of vindictiveness must be absent from judicial proceedings. Thus, as a prophylactic measure, the Supreme Court, in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) reversed a conviction where a greater sentence was imposed on a defendant after he was retried following reversal of his initial conviction. The Court found that the imposition of the greater sentence, for which there were no identifiable objective reasons appearing on the record, resulted in an impermissible chilling of the defendant's right to appeal.[4] The Court noted:

---

dictment, but is instead the structure of the superseding indictment.

Furthermore, since the instant case is not one involving the plea bargaining process, we need not discuss whether the analysis in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), would lend any significance to the failure of the government to inform appellees of their plans to seek a superseding indictment. We note in passing, however, that it was appellees who requested a combining of the two initial indictments.

**3.** Appellees' motion to dismiss encompassed three grounds aside from prosecutorial vindictiveness. Appellees contended that they were being selectively prosecuted more harshly than past demonstrators, because of their convictions, and that this selective prosecution violated the equal protection clause, that appellant was conducting the prosecution in bad faith,

without evidence to support the charges and without hope of success on the merits, and that this bad faith prosecution violated the appellees' due process rights; and that the indictment had been obtained through abuse of the grand jury process, in that the prosecutor was a former police officer and was currently married to a police officer, and that the indictment, was, therefore, tainted by conflict of interest in violation of appellees' Fifth Amendment rights.

**4.** *See also Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (finding that where increased sentence was imposed by a different judge after appeal to a trial *de novo*, possibility of vindictiveness was minimal); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (minimal possibility of vindictiveness where a different jury imposed a stiffer sentence on retrial).

Due process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since such fear of vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. [*Id.* at 725, 89 S.Ct. at 2080 (footnote omitted).]

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court extended its holding in *Pearce* to encompass vindictive prosecutorial action. In *Blackledge*, the defendant, convicted of an assault misdemeanor in a state court, claimed his right to a trial *de novo* in a higher court. The prosecutor then obtained a superseding indictment charging the defendant with a felony, assault with intent to kill, based on the same act as the earlier charge. The Supreme Court held that where a prosecutor who has a stake in the outcome "ups the ante" after a defendant exercises his right to a trial *de novo* in a two-tiered criminal system the ruling of *North Carolina v. Pearce* applies. The *Blackledge* Court emphasized that the lack of proof of bad faith is not fatal to a defendant's due process claim. Instead the Court observed:

There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rational of our judgment in the *Pearce* case, however, was not grounded upon the proposition

There is a degree of dissonance between *Pearce, Colten*, and *Chaffin*, as is inevitable when a court formulates rules in an attempt to regulate subjective behavior. Nonetheless, "[t]he lesson that emerges from [these cases] ... is that the [d]ue [p]rocess [c]lause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of vindictiveness." *Blackledge v. Perry*, 417 U.S. 21, 22, 94 S.Ct. 2098, 2099, 40 L.Ed.2d 628 (1974).

that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal ... [it is the apprehension of the harm which is the evil]." [*Blackledge v. Perry, supra* at 28, 94 S.Ct. at 2102, *quoting North Carolina v. Pearce, supra* 395 U.S. at 725, 89 S.Ct. at 2080.]

In *Wynn v. United States*, D.C.App., 386 A.2d 695 (1978), this court held that a prosecutor violated due process by adding additional charges in a misdemeanor case after the defendant had successfully moved for dismissal for want of prosecution. Finding that the government had offered no explanation for its action, we vacated the convictions.

■ The enunciations of *Blackledge* and *Pearce* have been interpreted as each establishing a prophylactic rule imposing limits upon prosecutorial discretion in seeking new indictments or in conducting retrials when such actions carry with them the opportunity of retaliation for a defendant's exercise of a statutory right that has due process implications. In the context of a colorable claim of prosecutorial vindictiveness, the prosecutor must justify his action in the same manner as would a judge under *Pearce*. *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976); *United States v. Jamison*, 164 U.S.App. D.C. 300, 505 F.2d 407 (1974); *United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974); *Sefcheck v. Brewer*, 301 F.Supp. 793 (S.D. Iowa 1969). The prosecutor's explanation should, of course, be viewed against the background of historic prosecutorial discretion.[5] *United*

5. Recently in *Bordenkircher v. Hayes, supra*, the Supreme Court considered this question in the context of plea bargaining. There, a prosecutor notified the defendant that if he failed to plead guilty to the indictment, he would be reindicted under a repeat offender statute that would subject the defendant to a mandatory prison sentence. The defendant refused to plead, and the prosecutor made good his threat. The Supreme Court, citing both the importance of plea bargaining to the administration of the

States v. Smith, D.C.App., 354 A.2d 510, 513 (1976).

### III

The teachings of Blackledge, Pearce, and their progenies have left us with the rule that due process of law requires the elimination of even the appearance of vindictiveness from the operation of the legal process.[6] In effectuating that principle, we think the approach governing such situations should be as follows: The trial court should, upon motion, review the accumulation of circumstances of record and decide, without more, as a threshold matter whether the allegations as to a prosecutor's actions give rise to a realistic likelihood of prosecutorial vindictiveness.

If this examination results in a negative finding, the trial court should go no further, but need only enter the appropriate ruling. If, however, the examination results in an affirmative finding, the obligation is then on the government to answer or explain the allegations.

In determining whether the government has met its burden, the trial court should consider the government's explanation in conjunction with several factors. These factors include, but are not limited to:

1. *The nature of the case.* For example, a prosecutor should have greater latitude to augment charges when dealing with multiple criminal acts or a crime spree; see Jackson v. Walker, 585 F.2d 139, 145–46 (5th Cir. 1978); Hardwick v. Doolittle, 558 F.2d 292, 301 (5th Cir. 1977), than when he is dealing with a simple criminal act. See Miracle v. Estelle, 592 F.2d 1269, 1276 (5th Cir. 1979).

2. *The status of the case.* A prosecutor should have broader leeway to add charges before an initial trial than in a case where a defendant is to be tried a second time. See United States v. Thomas, 593 F.2d 615, 624 (5th Cir. 1979); and

3. *The (a) nature of the right involved, (b) vindictiveness alleged, and (c) nature of the harm involved.* Important to the trial court's consideration is the length of additional potential incarceration. If a prosecutor seeks to augment the charges when a defendant exercises his right to a trial de novo, as occurred in Blackledge, the appearance of vindictiveness would be great. On the other hand, if a prosecutor seeks a superseding indictment on retrial which substitutes a lesser charge which happens to carry a greater potential prison term, an appearance of vindictiveness exists, but defendant's apprehension of vindictiveness will not be great. See Jackson v. Walker, supra. In each case there would be a factual determination to be made, necessarily on an ad hoc basis.

This approach affords some degree of manageability to the oftentime nebulous concept of prosecutorial vindictiveness, balancing the conflicting legitimate interest of both parties, and thus providing some degree of structure to the trial court's examination for the existence of prosecutorial vindictiveness.

criminal process, 434 U.S. at 363-64, 98 S.Ct. at 667-69, and the fact that the prosecutor had openly advised the defendant in advance of the consequences of declining the plea offer, id. at 363, 365, 98 S.Ct. at 667, 669, held in a five-to-four decision that:

> The course of conduct engaged in by the prosecutor in this case which no more than openly presented the defendant with the unpleasant alternative of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the due process clause. [Id. at 365, 98 S.Ct. at 669]

Bordenkircher was careful to contrast the give and take of plea bargaining with the "unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right." Id. at 362, 98 S.Ct. at 667.

6. These cases have, however, been relatively silent in providing an approach to be used in determining: (1) how and at what stage should a determination be made that a realistic likelihood of prosecutorial vindictiveness exists; and (2) what is an appellate court's scope of review in regards to such a finding. In an attempt to fill this chasm, we adopt an approach similar to that advanced by Judge Damon Keith, in his dissent in United States v. Andrews, 612 F.2d 235, 247 (6th Cir. 1979) (Keith, J., dissenting) (adopting a balancing test somewhat similar to that advanced in Jackson v. Walker, 585 F.2d 139 (5th Cir. 1978)).

## IV

In applying the approach we outlined in Part III of this opinion, we find the trial court to have correctly made the threshold determination that the reindictment of appellees and their resulting added exposure to liability, resulted in the appearance of vindictiveness on the part of the government. In the wake of such a finding, the burden was then on the government to dispel that appearance.

In the proceedings below, the government proffered an explanation for the increase in penalties in the new indictment, to wit: appellees, by their prearranged and concerted attack on the police, are jointly and individually responsible for each of the assaults alleged. A consolidation of all the charges, though not the approach initially chosen by the government, necessarily increases the number of charges grounded on the theory of aiding and abetting.

In attacking the government's explanation, appellees point to the July 5, 1979, arraignment before Judge Braman, where appellees informally announced their intention at a later date, to consolidate the two indictments for trial joining all seventeen appellees. Judge Braman asked the government's position. The government responded that during the grand jury investigation "it became obvious that there were two different types of cases and these were indicted separately."

Appellees would have this court find that the fact that this explanation of the government differs with their later explanation—*i. e.*, that the initial division of the charges against appellees had been artificially made for the convenience of the court and the benefit of appellees—the later explanation becomes one of the elements giving rise to the appearance of vindictiveness and thus cannot serve an explanative role. We disagree.

The government's explanation for its initial charging scheme: (1) was given at the preliminary hearing stage; (2) emanated from an informal statement made by appellees; and (3) involved seventeen defendants all of whom were facing numerous charges.

We find it unreasonable, considering these circumstances, to hold the government to pinpoint accuracy and steadfast consistency in regard to every statement it makes. Though such a responsibility may be imposed at other stages in the progression of a case, such is not the case at this stage.

Proper analysis of this case requires that we consider the nature of the request being asserted—a request for a joint trial. The Criminal Rules of the Superior Court do not provide to an accused the right to a joint trial. However, Super.Ct.Cr.R. 13 states:

> The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. This procedure shall be the same as if the prosecution were under such single indictment or information. . . .

On its face, a request of this nature carries with it much less potential for inviting punitive retaliation by the prosecutor than, for example, successfully appealing a conviction or securing a mistrial, both of which exact from the prosecution the effort and expense of a new trial. *Compare Blackledge v. Perry, supra; United States v. Jamison, supra.*

A joint trial of numerous defendants, by itself, is presumptively less prejudicial to the prosecution than to the defense because of the risk of guilt by association. Consequently, a request by defendants to be tried together normally thwarts no prosecutorial purpose and, in general, is unlikely to invite retaliation. In short, the nature of the assertion by appellees in itself makes less likely that vindictiveness underlaid the government's decision to seek reindictment. When we examine the government's statement of concern for the manageability of conducting a seventeen defendant trial, and view that explanation in conjunction with the factors we outlined in Part III, it becomes apparent that the trial court's ruling that, in these circumstances, the government was motivated by vindictiveness in

seeking the new indictment was without support in the record before us. Other than its reference to the government's other options,[7] the trial court gave no reasons for finding the government's explanation insufficient to erase any invidious nexus between the defense request for joinder and the reindictment. The trial court's finding thus approximates a per se rule that any increase of charges after a defendant's assertion of a procedural right is impermissible, a rule which no appellate court in the nation has adopted. On the contrary, courts have emphasized that prosecutorial motivation, inherently a complex question, see *Jackson v. Walker, supra*, must be examined in the "setting" of each case to determine whether the increase in charges would give future defendants a reasonable apprehension of retaliation for asserting a similar right. *Wynn v. United States, supra*.

An examination of the totality of the circumstances in this case compels a finding that the government's explanation for the reindictment, not questioned by the trial court, was adequate to negate any realistic apprehension that vindictiveness motivated the increase in charges. Accordingly, the judgment of the trial court is reversed.

*Reversed.*

GALLAGHER, Associate Judge, concurring:

I concur, though I express a reservation in respect to the guidelines laid down in Part III of the majority opinion.

I might say that I have a certain difficulty in understanding "the right" which the dissenting opinion says was asserted in this case. The defendants moved that they all be joined for trial. I know of no such right. Certainly, it is not "assertion of right"

within the meaning of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) or *Wynn v. United States*, D.C.App., 386 A.2d 695 (1978).

MACK, Associate Judge, dissenting:

I find the analysis of the majority troubling and its holding *contra* to established law in this jurisdiction. I can think of no more compelling combination of circumstances for invoking the due process doctrine against prosecutorial vindictiveness than that presented here.

The spectre of prosecutorial vindictiveness arises whenever the prosecution "ups the ante" after a defendant has exercised a right in which the prosecution has a stake. Here the defendants exercised a right, permitted by our rules, in requesting joinder; the government by its own admission had a "stake" in prosecuting the defendants in two groups; the reindictment following the motion for joinder, without advance notice to the defendants or the court, exposed each defendant to 105–135 additional years punishment on 10–14 additional felony counts. This is the appearance of vindictiveness which the majority recognized. Having cogently and correctly argued that due process requires the elimination of the appearance of vindictiveness in the legal process, the majority lapses into faulty reasoning.

In the first instance, the majority has lost sight of the fact that the trial court, after a hearing, found not merely the appearance of vindictiveness but actual vindictiveness. This record clearly shows that the trial judge found *as a matter of fact* that the government had retaliated against the accused for requesting joinder. We are required to sustain the trial court's determination unless it is clearly erroneous or without support in the record.[1]

---

7. In dismissing the superseding indictment, the trial court did not dispute the truth of the government's explanation for the reindictment, stating only that the government had other "options" than reindictment by which to resolve its strategic concerns.

1. The majority employs an ambiguous standard of review. A hearing was held and a finding of

vindictiveness made by the trial judge. Thus, we are at most presented with a mixed question of fact and law, if not simply a factual matter. Yet the majority seems to treat this as a matter of law alone; or alternatively that the court's ruling is not supported by sufficient evidence. Moreover, the majority engages in its own factfinding and accepts as persuasive the very facts the trial court rejected, at the

In the second instance, the majority—certainly after the fact in this case—has written into the doctrine of prosecutorial vindictiveness a balancing test[2] which is contrary to established precedent, inconsistent with due process concerns, and irrelevant to the purposes for which it is advanced. Thus we all agree that, once there are factors raising the appearance of vindictiveness, it is the government that has the burden of dispelling the likelihood of such. Yet the majority's inquiries as to the nature of the right exercised by the accused, the nature of the harm suffered by the accused, and the nature and status of the case shed no light whatsoever on the question of whether the government was acting in retaliation. Quite obviously, once the possibility of vindictiveness exists, the proper inquiry is whether the alleged retaliatory action was sufficiently independent of the defense assertion of a right as to make the likelihood of vindictiveness de minimus.

Both the Supreme Court in *Pearce*[3] and *Blackledge*,[4] and the United States Court of Appeals for the District of Columbia, in *United States v. Jamison*,[5] have alluded to the type of factors and proof necessary to dispel an apparently vindictive motive.[6] In *Pearce*, the Supreme Court held that a sentencing judge, upon retrial, must justify a harsher sentence on the record in a way which negates the possibility of vindictiveness. In *Blackledge*, the Court noted one factor that might dispel the likelihood of vindictive motivation of a prosecutor's reindictment—the impossibility of proceeding on the more serious charge in the first indictment. 417 U.S. at 30 n.7, 94 S.Ct. at 2103 n.7. In *Jamison*, the District of Columbia Circuit elaborated on these cases, reasoning that a reindictment on an increased charge "might in some circumstances be justified by intervening events or by new evidence of which the government was excusably unaware at the time of the first indictment." *Id.* 164 U.S.App.D.C. at 310, 505 F.2d 407.[7] One can deduce from these cases that when the prosecution "ups the ante" after defense assertion of a right, the government has the burden of showing some independent or new circumstance to dispel the apparent retaliation. Absent such a showing, the reindictment cannot stand.

In my view, the reindictment should not stand in this case. The trial court held the proper inquiry[8] to enable the government to dispel the likelihood of vindictiveness and determined thereafter that there were facts establishing vindictiveness. The court's determination is well supported by a record, not only showing that there were no intervening events or new evidence dispelling vindictiveness, but replete with inferences to be drawn to the contrary from prosecutorial timing, inconsistent positions, inadequate explanations, a candid but near-facetious admission, and silence in the face of an affirmative duty to speak.

Thus the record shows that at the July 5 arraignment of the Schiller defendants, the defense revealed they would seek joinder. The government opposed this suggestion,

same time rejecting the facts the court relied on—the government's silence and changing explanations.

2. The majority has not given the trial court the option of "balancing" in this case.

3. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

4. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

5. *United States v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (1974).

6. In addition, *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) would seem to suggest that advance notice to the

defense of the possible consequences of seeking joinder is also required.

7. *See Harvey v. United States*, D.C.App., 395 A.2d 92, 98 (1978), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979) (even where prosecutor reindicted after failure of plea bargain, governed by *Bordenkircher*, we nonetheless noted the preferred practice of bringing all the charges at the outset, unless there were compelling reasons for bringing a later charge such as new evidence).

8. *See Wynn v. United States*, D.C.App., 386 A.2d 695 (1978).

giving as its reasons that "during the grand jury stage it became obvious that there were two different types of cases and these were indicted separately because we expect little overlapping witnesses . . ." and "one of the reasons that the cases are indicted separately is based on what the government's evidence in each case is going to be, and it's going to be different." (Indeed, the two indictments underscore this assertion: in the Schiller indictment, each defendant was named as a principal in at least one count; none of the defendants in the Avakian indictment was named as a principal.)

The defense formally filed its motion for joinder on July 17. On July 24 the government obtained the second indictment. On July 25, the government filed its response to the formal motion, now giving a different reason for the first indictments: "the government was trying to avoid the confusion of having seventeen defense attorneys and seventeen defendants in trial at once and to minimize prejudice to the defendants against whom we have the least amount of evidence." The government no longer opposed joinder "because the defendants now specifically waive any potential prejudice." The pleading stated an intention to seek reindictment because it would be "impractical and prejudicial to the government to try the existing indictments together." But it had already obtained the new indictment, significantly increasing the charges as to each defendant, without revealing this "price" either to the defense or the court. This silence of the government is a key factor in the trial court's conclusion.

Finally, in its opposition to the defense motion to dismiss Indictment # 2, the government explained that "[f]or what the government had thought would be convenient packaging for trial, the government initially chose to [indict separately]. However when defendants asked for joinder . . . the government *gave them what they asked*

*for*. The new indictment holds them all accountable for all the assaults to which they plan their common defense." (Emphasis added.)

We cannot ignore this record. Rather I think that in the circumstances here the *Pearce-Blackledge* line of cases operates, in effect, to take the decision to reindict out of the realm of prosecutorial discretion. The evidence was known to the prosecutor when it brought the first indictments. It made the initial decision, for apparently valid tactical and administrative reasons, to indict the defendants in two groups. When the motion for joinder was made, the government realized the trial of all the defendants under the existing indictments presented problems prejudicial to its case. Faced with the joinder motion and possible prejudice to its case, it should have opposed joinder unless a second indictment were possible and presented the issue to the trial court for resolution. This would have put the defendants on notice, as would seem to be required by *Bordenkircher*, of the possible consequences of their request, before it became a fait accompli. Had the second indictment been ordered by the trial judge, the taint of vindictiveness would have been dispelled.[9]

The defendants are charged with serious accusations. Yet the government, in giving them what they asked for, also is engaged in serious business, and so are we. Of the 78 persons originally arrested, the grand jury returned indictments for only 17. Each of the 8 Schiller defendants was originally charged with 15 felony counts, upped to 25 counts after reindictment, exposing them to potentially an additional 105 year punishment. The 9 Avakian defendants were each originally charged with 12 felony counts, none as named principals, to which 14 were added, increasing their punishment exposure to 135 years.[10]

9. *See, e. g., Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (where increased sentence was imposed by different judge, the possibility of vindictiveness was dispelled); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (where

jury, rather than judge, imposed stiffer sentence, possibility of vindictiveness dispelled).

10. For unexplained reasons, one of the Avakian defendants, Barry Greenberg, was a named principal in the second indictment. In the original indictment he was not.

The trial court, after a hearing, made a finding of actual vindictiveness. I do not see how, on this record, an appellate court can conclude that there is no "realistic likelihood of vindictiveness." If the rule against prosecutorial vindictiveness is to mean anything in this jurisdiction, it must be applied here.