**UNITED STATES, Appellant,**

v.

**Musa MAHDI, Appellee.**

**No. 00–CO–1288.**

District of Columbia Court of Appeals.

Argued May 24, 2001.

Decided Aug. 2, 2001.

---

Maria N. Lerner, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary Patrice Brown, and Mark J. Lesko, Assistant United States Attorneys, were on the brief, for appellant.

Roosevelt F. Brown III, Washington, DC, appointed by the court, for appellee.

Before STEADMAN, RUIZ, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

The United States brings this appeal from a grant of appellee's Motion to Dismiss for Vindictive Prosecution, arising out of charges of possession of cocaine and simple assault. The trial court granted in part and denied in part appellee's motion, dismissing the simple assault charge and allowing the possession of cocaine charge to go forward. The government appeals this ruling, alleging that the trial court

erred in applying the law on prosecutorial vindictiveness. We agree that because the evidence established that there was no actual vindictiveness on the part of the prosecution, dismissal was not warranted, and reverse.

## FACTUAL SUMMARY

On July 16, 1998, appellee, Musa Mahdi, was arrested for assault on a police officer and possession with intent to distribute cocaine. The following day, Mahdi was charged by information with one count of simple possession of cocaine, in violation of D.C.Code § 33–541(d). The case was called for trial on September 23, 1998, but was dismissed for want of prosecution. On October 8, 1998, Mahdi filed a civil lawsuit against the District of Columbia and Metropolitan Police Department (MPD) officers which was based in part on incidents that occurred on the date of his arrest in the instant case.[1] On November 13, 1998, the government re-brought the case against Mahdi by filing a new information, charging possession of cocaine as well as simple assault.

1. *Motions and Hearing on Vindictive Prosecution*

On May 11, 1999, Mahdi filed a Motion to Dismiss for Vindictive Prosecution, alleging that the government was prosecuting him in retaliation for the civil lawsuit he filed against the District of Columbia. In support of his motion, appellee asserted that, "On October 8, 1998, a multi-million dollar lawsuit . . . was filed against numerous D.C. Metropolitan Police Officers; [i]n

November 1998 at a hearing on the civil case, the Corporation Counsel's office indicated that charges were going to be re-brought against Musa Mahdi; . . . [and] in late December 1998, the old cocaine charge was re-brought along with a new assault charge." The motion also alleged that, "[i]t was intimated that if Mr. Mahdi continued to pursue his claims against the Fourth District Police, then he would continue to be prosecuted."

The government opposed, contending that appellee's motion should be denied without a hearing because it failed to raise a colorable claim of vindictive prosecution. According to the government, 1) the omission of the simple assault charge from the original information and the dismissal of the case on the first trial date were due to administrative errors within the District of Columbia United States Attorney's office, not "some legal defect in the case or other substantive problem with the case"; 2) the initial decisions to charge simple assault and to reinstate the case were made before appellee filed his civil suit; and 3) although final supervisory approval of the decision to reinstate the case was given after the civil suit was filed, and after Assistant United States Attorney ("AUSA") Edward Parks (the government attorney responsible for the case) spoke with Assistant Corporation Counsel ("ACC") Michael Stern (who was defending the civil lawsuit), final approval to reinstate the government's case and add the simple assault charge was not influenced by the existence of the civil suit. In support of its opposition, the government proffered that soon after the

---

1. Appellee and his brothers, Abdur and Malik Mahdi, filed a civil complaint against the District of Columbia, the Chief of Police, and numerous officers in the MPD's Fourth District. The complaint alleged, *inter alia,* false arrest and imprisonment, negligence, assault, intentional infliction of emotional distress, and malicious prosecution in connection with the arrests of all three Mahdi brothers on August 4, 1998 and the arrest of appellee on July 16, 1998. The complaint also alleged § 1983 claims such as a policy of "deliberate indifference and reckless disregard for the constitutional rights of persons within the District of Columbia."

case was dismissed for want of prosecution (and before the civil suit was initiated), AUSAs Haines and Parks had noted on the jacket that the case should be "re-brought" and the assault charge should be added. Subsequently, after the civil suit was filed on October 8, 1998, ACC Stern contacted AUSA Parks about the instant case and another case that was relevant to defendant's lawsuit and Parks informed Stern that he intended to "rebring" the instant case. The Government also admitted in its motion that AUSA Parks had informed his supervisor, AUSA Cowgill, that the phone call from ACC Stern gave Parks the impetus to act on his earlier decision, but that the pending civil lawsuit had no effect on AUSA Cowgill's final supervisory decision.

At the hearing, appellee presented three witnesses in support of his allegations of prosecutorial vindictiveness: ACC Michael Stern, AUSA Edward Parks, and Abdur Mahdi, appellee's brother. ACC Stern testified that on October 13, 1998, in his capacity as an attorney in the Office of Corporation Counsel for the District of Columbia, he received the civil complaint filed by appellee and his brothers against numerous MPD officers. After learning that an "assault charge" had been "no papered" and the remaining cocaine charge against appellee had been dismissed, ACC Stern telephoned the U.S. Attorney's Office to learn the details of the disposition of the instant case. AUSA Parks informed ACC Stern that the case was initially dismissed for want of prosecution because of an administrative error in the witness room, that the decision to rebring the case had already been made, and that both the cocaine and assault charges would be re-brought, pending supervisory approval. AUSA Parks indicated that the case file was sitting in his "rebring stack." The phone call was brief, lasting only about five minutes, and ACC

Stern did not recall ever speaking to AUSA Parks again.

AUSA Parks testified regarding his role in the case, and described the process by which misdemeanor cases are rebrought. Parks testified that the reason the charges were dropped for want of prosecution on September 23, 1998, was because the government attorney had been notified that the officers in the case were not available in the witness room, so the government was not ready. A decision to rebring the case was made immediately when the case file was returned from court on September 23, and was put in the "rebring stack," pending supervisory approval. Parks stated that on October 13, 1998, after he had already decided to rebring the case, but before he had obtained supervisory approval, he was contacted by ACC Stern and discussed the posture of the case with Stern. Parks's decision to rebring the criminal charges against appellee was not affected by his conversation with Stern. He conceded, however, that the conversation instigated him to "speed up" the process and request supervisory approval. Thus, after the call from ACC Stern, AUSA Parks spoke with his supervisor, Kenneth Cowgill, who authorized Parks to rebring the case and include the assault charge that should have been included in the original information.

AUSA Parks also explained that the assault charge was omitted from the original information "not because of a decision by [the USAO] not to bring it ... [but] because someone didn't type up the information and stick it in the jacket" due to an oversight by the papering AUSA in filling out the information forms. He stated that on September 23, 1998, the AUSA who handled the case when it was first called to trial realized that the simple assault charge was inadvertently left out, and noted on the jacket that when the case was

rebrought, the simple assault charge should be included. That AUSA also informed Parks of this fact when she gave him the file after returning from court.

Abdur Mahdi testified that he had a conversation with MPD Officer Calligro about the case. He testified that Officer Calligro said that he pressured the USAO to rebring the case against appellee.

### 2. Trial Court's Ruling

At the outset the court noted that "it is clear that there is no vindictiveness" in the government's decision to rebring the drug charge. The court also made a finding that "the evidence is clear" that the prosecutor's decision to rebring the criminal charges was made before the civil suit was filed. It found, however, that the final decision to rebring the charges was "accelerated" because the prosecutor knew of the civil lawsuit and that an acceleration of charges would be enough to create an apprehension of vindictiveness in the appellee. Thus, the trial found that, "by accelerating the normal process, it creates the appearance that these charges were being rebrought as a result of Mr. Mahdi having sought legal recourse in filing the [lawsuit]" and "[b]ased upon *Wynn v. United States*, I deny in part, the defense motion to dismiss the possession of cocaine, but grant with regard to the simple assault." [2]

In making its decision, the trial court was of the opinion that our decisions in *Wynn v. United States*, 386 A.2d 695 (D.C.1978), and *United States v. Schiller*, 424 A.2d 51 (D.C.1980), were inconsistent and each case would compel him to reach a different conclusion. The trial judge thought that, under *Wynn*, the simple assault charge should be dismissed because there was a "manifestation of vindictiveness," but, under *Schiller*, the government would most likely prevail, looking at all of the factors and circumstances in this case and the fact that they adequately rebutted the appearance of vindictiveness. The trial court considered that *Wynn* did not permit the government to rebut a claim of vindictiveness because, as the court stated, "it's not clear to me what the adequate explanation would add if the issue is whether or not there's an apprehension or a manifestation of vindictiveness...." The court determined that even though the "ultimate inquiry ... negate[s] any realistic apprehension that vindictiveness motivated the increase in charges," *Wynn* controlled, and not *Schiller*, and thus the simple assault charge should be dismissed.[3]

### ANALYSIS

We take this opportunity to state the basis for the doctrine of vindictive prosecution and to clarify the procedure the court should employ to determine whether a defendant is entitled to relief. In a series of cases including *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969),[4] *Blackledge v.*

---

2. The court ostensibly found that *both* charges were accelerated because of the civil lawsuit, but dismissed only the simple assault charge. The difference in treatment appears to be based on the trial court's determination that "[n]ow it is clear that there is no vindictiveness that having rebrought the possession of cocaine. That is a count with which Mr. Mahdi was charged initially in this case and which was rebrought in the second information."

3. The court stated, "[s]o as I see it, *Wynn* would lead me to grant the motion to dismiss the simple assault. *Schiller* would lead me to deny the motion for dismissing the simple assault ... Ultimately, I decided with *Wynn*. ..."

4. In *Pearce*, the Court held violative of due process an increased sentence upon reconviction following a successful appeal absent findings placed in the record by the sentencing

*Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974),[5] *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)[6] and culminating in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court has held that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Goodwin,* 457 U.S. at 372, 102 S.Ct. 2485 (internal citations omitted). Therefore, in certain cases in which the prosecution has taken actions against the defendant after the defendant exercised a protected statutory or constitutional right, the courts have presumed an improper vindictive motive which may warrant dismissal of the prosecution's charge. *See id.* at 373, 102 S.Ct. 2485. The rationale for the presumption is "not grounded on the proposition that ac-

tual retaliatory motivation must inevitably exist, [r]ather . . . 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of [his or her rights] . . . due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of [the prosecutor].' " *Blackledge,* 417 U.S. at 28, 94 S.Ct. 2098 (quoting *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072). The presumption can be overcome, however, by objective evidence justifying the prosecutor's action. *See Goodwin,* 457 U.S. at 376 n. 8, 102 S.Ct. 2485; *Blackledge,* 417 U.S. at 29 n. 7, 94 S.Ct. 2098 (noting that it would be a different case if the state had rebutted); *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072 (noting that the state offered no evidence attempting to justify the increase in sentence).[7]

judge requisite to rebut the presumption of judicial vindictiveness. *See Pearce,* 395 U.S. at 711, 89 S.Ct. 2072. In *Pearce,* the Court stated that, "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation . . ." *Id.* at 725, 89 S.Ct. 2072.

5. In *Blackledge,* the Court confronted the problem of increased charges after appeal. After filing his notice of appeal, respondent was indicted on felony charges addressing the same conduct which had earlier given rise to only a misdemeanor charge. The Court held this constitutionally impermissible, holding that the "realistic likelihood" of vindictiveness justified a presumption that would free defendants of apprehension of such retaliatory motivation on the part of the prosecutor. The government did not overcome the presumption by objective evidence justifying the prosecutor's action. *See Blackledge,* 417 U.S. at 29 n. 7, 94 S.Ct. 2098 (noting that "[t]his would clearly be a different case if the State

had shown that it was impossible to proceed on the more serious charge at the outset . . .").

6. *Bordenkircher* was the first time the Court considered an allegation of prosecutorial vindictiveness that arose in a pretrial setting. The case dealt with the institution of higher charges during plea bargaining, after notifying the defendant of the consequences of failing to plead to the lesser charge. *See Bordenkircher,* 434 U.S. at 365, 98 S.Ct. 663. In declining to apply a presumption of vindictiveness, the Court recognized that additional charges obtained by a prosecutor could not necessarily be characterized as an impermissible penalty because charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation. The Court suggested that the validity of a pretrial charging decision must be measured against the broad discretion of the prosecutor. *See id.* at 364, 98 S.Ct. 663.

7. *Cf. Newton v. Rumery,* 480 U.S. 386, 397 n. 7, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (explaining that, although an improper vindictive motive is presumed for certain action, "the complexity of pretrial decisions by prosecutors suggests that judicial evaluation of those decisions should be especially deferential").

The most recent Supreme Court case on prosecutorial vindictiveness is *Goodwin*, which, like the instant case, involved a *pretrial* decision to modify the charges against the defendant. In *Goodwin*, an individual charged with several federal misdemeanor and petty offenses at first expressed a desire to engage in plea bargaining regarding these charges, but later refused to plead guilty to the charges and instead requested a jury trial. *See* 457 U.S. at 370, 102 S.Ct. 2485. The prosecutor then sought and received an indictment including one felony count arising out of the same facts which constituted the lesser offenses. *See id.* The Court held that a presumption of prosecutorial vindictiveness is applicable where a "realistic likelihood of vindictiveness" exists, but that the presumption was not warranted under the facts in *Goodwin. Id.* at 384, 102 S.Ct. 2485. In addition, the Court held that a change in the prosecutor's charging decision made *before* trial is less likely to be improperly motivated than when such a decision is made after an initial trial. *See id.* at 382, 102 S.Ct. 2485. While *Goodwin* did not need to reach the issue, the Court noted that if a presumption applied, it could be overcome by objective evidence justifying the prosecutor's action. *See id.* at 376 n. 8, 102 S.Ct. 2485.

■ The main principles contained in our cases, *Shiel v. United States*, 515 A.2d 405, 410–411 (D.C.1986),[8] *Schiller*, 424 A.2d at 55–56, and *Wynn*, 386 A.2d at 697–98,[9] are consistent with Supreme Court

decisions on prosecutorial vindictiveness. We hold that the test laid out in *Schiller*, which refined *Wynn*, most clearly lays out the appropriate test for evaluating prosecutorial vindictiveness based upon Supreme Court precedent, including the most recent Supreme Court case, *Goodwin.* In *Schiller*, we held that the rule against prosecutorial vindictiveness "requires the elimination of even the *appearance* of vindictiveness from the operation of the legal process." 424 A.2d at 56 (emphasis added). The appropriate procedure is that,

> The trial court should, upon motion, review the accumulation of circumstances of record and decide, without more, as a threshold matter whether the allegations as to a prosecutor's actions give rise to a realistic likelihood of prosecutorial vindictiveness.
>
> If this examination results in a negative finding, the trial court should go no further, but need only enter the appropriate ruling. If, however, the examination results in an affirmative finding, the obligation is then on the government to answer or explain the allegations.

*Id.*

■ We then listed factors that the court should consider in determining whether the government has met its burden to overcome the presumption by showing that there was no actual vindictiveness. Those factors include the nature of the case; status of the case, including the fact that a prosecutor should have broader lee-

8. In *Shiel,* we held that appellant could not prove actual vindictiveness because he "can point to no more evidence of vindictiveness than the fact that a higher charge was instituted after he insisted on trial." 515 A.2d at 411. We held that such a modification, without more, proves only an "opportunity" for vindictiveness and there were "countervailing indications" of a lack of prosecutorial intent to be vindictive. *See id.*

9. In *Wynn,* we held that a prosecutor violated due process by adding charges in a misdemeanor case after the defendant had successfully moved for dismissal for want of prosecution. We held that the "appearance" of vindictiveness, rather than vindictiveness in fact, controls where the government failed to rebut the claim of vindictiveness. *See Wynn,* 386 A.2d at 698.

way to add charges before an initial trial than in a case where a defendant is being tried a second time; nature of the right involved as to which the vindictiveness is alleged; and nature of the harm involved, including length of additional potential incarceration. Although *Schiller* was decided before *Goodwin*, it accurately reflects the current state of the law as set out in *Goodwin* and notes that "a prosecutor should have broader leeway to add charges before an initial trial." *Schiller*, 424 A.2d at 56.[10]

 Applying the *Schiller* test to the instant case, we hold that the trial court erred in determining that the "acceleration" of charges was sufficient to warrant dismissal of the assault charge, without taking into account the government's rebuttal evidence.[11] With regard to the first part of the *Schiller* test, we agree with the trial court that there was an appearance of vindictiveness and a "realistic likelihood" of vindictiveness from the appellee's perspective after the government rebrought the drug charge with an added simple assault charge, and admitted to accelerating the process after learning of the civil lawsuit. However, we hold that the government provided evidence, credited by the trial court, that aptly rebutted the presumption and showed that there was no actual prosecutorial vindictiveness. The prosecutor offered an adequate explanation for why the government did not initially bring the simple assault charge, and provided evidence that dismissal of the drug charge was the result of an adminis-

trative error. *See generally Schiller*, 424 A.2d at 58 (finding the government's explanation appropriate). As both *Schiller* and *Goodwin* recognize, a prosecutor should have broader leeway to add charges before trial. Lastly, the harm in this case was merely an *acceleration* in rebringing the charges; the trial court made a finding that the government's decision to rebring the drug charge and add the simple assault charge was already made before being notified of the civil suit and that the charges would have been pressed even if there had been no civil action against the District of Columbia. Therefore, we hold that the government's evidence adequately rebutted the presumption of vindictiveness, and established that there was no actual vindictiveness on the part of the prosecution. Accordingly, the judgment of the trial court is

*Reversed.*

---

**10.** A concurrence in *Schiller* questioned the factors set forth in the majority opinion for assessing the government's burden. *See* 424 A.2d at 58 (Gallagher, J., concurring). We think that these factors accurately reflect Supreme Court precedent on this issue. In *Goodwin*, many of these factors, including the nature of the right asserted, the timing of the prosecutorial decision, and the status of the case were considered by the Court. *See*

*Goodwin*, 457 U.S. at 381–382, 102 S.Ct. 2485.

**11.** The trial court agreed that if it applied *Schiller*, the government would have prevailed, but because it considered *Wynn* as inconsistent with *Schiller*, it applied *Wynn* and not *Schiller*. Under either *Wynn* or *Schiller* the government prevails because it adequately rebutted the presumption.