**David SIMMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11–CM–585.**

District of Columbia Court of Appeals.

Argued Jan. 31, 2012.
Decided April 12, 2012.

---

Fletcher P. Thompson, Crownsville, MD, for appellant.

John L. Hill, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Mary B. McCord, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and Easterly, Associate Judges, and FERREN, Senior Judge.

EASTERLY, Associate Judge:

Mr. Simms appeals from his conviction for assault on a police officer ("APO") on the ground of prosecutorial vindictiveness. Specifically, Mr. Simms contends that the government, having announced that it was ready to try its case against him, vindictively added an APO charge to a preexisting charge of possession of marijuana after Mr. Simms exercised his right to compulsory process and asked the trial court to enforce a subpoena, thereby prompting the trial court to continue the case. Mr. Simms argues that, under the circumstances, he should have received the benefit of a rebuttable presumption of vindictiveness, which would have shifted the burden to the government to explain its decision to add the APO charge. We agree.

We recognize that the Supreme Court and this court have made clear that a defendant cannot make out a claim of prosecutorial vindictiveness merely upon a showing that the prosecution filed additional charges after the defendant exercised, pretrial, a constitutionally or statutorily protected right. We acknowledge that pretrial litigation is by its very nature fluid, that jockeying for advantage is the

norm in our adversarial system,[1] and that the government may reasonably reassess its case in the lead-up to trial. But the government's announcement that it was ready to try Mr. Simms's case on the scheduled trial date puts this case outside the typical pretrial paradigm. By announcing that it was ready to go to trial, the government communicated that this fluid pretrial period was over. This was an announcement on which Mr. Simms had a right to rely. Based on this announcement and the other accumulation of circumstances detailed below, we conclude Mr. Simms was entitled to a rebuttable presumption of vindictiveness when the government subsequently decided to charge Mr. Simms with APO. Accordingly, we remand to the trial court to give the government an opportunity to provide a benign explanation for its actions or, failing that, to vacate the APO conviction and dismiss this charge.

## I. Facts and Procedural History

In the early morning hours of October 15, 2010, appellant, David Simms, was arrested for possession of marijuana and failure to obey a lawful order. Later that same day, Officer Pezzat signed an affidavit detailing the event. In her affidavit, Officer Pezzat stated that she and her partner, Officer Selby, approached Mr. Simms on the 1100 block of Vermont Ave., N.W., after observing him toss what she perceived to be three small bags of marijuana into a nearby tree box. According to Officer Pezzat, Mr. Simms ignored the officers' orders to stop, and instead contin-

ued walking into the unit block of Thomas Circle, N.W. Officer Pezzat repeated the order to stop, and Mr. Simms "again refused and then picked up his speed as if to run." Both officers "gave chase," and Officer Pezzat was "able to grab the back of [Mr. Simms's] t-shirt and coat as he tried to flee, struggle ... and resist."

On the afternoon of October 15, 2010, Mr. Simms was arraigned and charged with unlawful possession of a controlled substance (marijuana), D.C.Code § 48–904.01(d) (2001). The Office of the Attorney General ("OAG") declined to file charges for failure to obey a lawful order. At an initial status hearing on November 10, 2010, Mr. Simms elected to go to trial, and the court scheduled a bench trial for January 31, 2011.

On January 31, 2011, the scheduled trial date, the trial court called the case, and asked, "is the government ready?" The government responded unequivocally, "the government is ready, your honor."[2] The defense, however, informed the court that it was not ready to begin trial because the government had not yet provided it with a copy of the DEA–7 reflecting the results of the drug testing. The court passed the case. After recalling the case, the court noted, "the government did announce ready, and counsel had not received the DEA–7 which has been provided now, is the defense now ready to proceed to trial?" Again the defense said it was not ready, because the Department of Homeland Security ("DHS") had not responded to a subpoena *duces tecum* for security video

---

1. Even so, representatives of the government must, of course, at all times operate within the limits of *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (the government's interest in a "criminal prosecution is not that it shall win a case, but that justice shall be done").

2. Mr. Simms highlighted this fact in both his motion to dismiss and his brief on appeal; by contrast, the government's brief omits this fact. We reviewed the audiotape from this date to confirm that the government announced that it was ready, and our more detailed discussion of the January 31, 2011, proceeding is based on the review of that recording.

footage of Vermont Avenue, N.W., the street upon which the DHS is located, for the time of the alleged encounter between Mr. Simms and the police; the defense asked the court to enforce the subpoena.[3] The court passed the case again to see if the matter could be quickly resolved. When the court recalled the case again and determined that it could not be, the court informed the government that it would not hold a trial that day. The court then granted a continuance in order to give the government an opportunity to contact the DHS and scheduled a status hearing for February 10, 2011.

On February 4, 2011, four days after the initial trial date, the government informed the defense counsel that the surveillance camera tape had been erased. That same day, the government amended the information to include the additional charge of assaulting a police officer ("APO") in violation of D.C.Code § 22–405(a) (2001).

On February 28, 2011, Mr. Simms filed a motion to dismiss the information for vindictive prosecution. In his motion, Mr. Simms noted that the government had announced that it was ready to try his case on January 31, 2011, before it amended the information to add the APO charge. On April 7, 2001, without holding a hearing or directing a response from the government, the trial judge denied Mr. Simms's motion. The court ruled that, "the addition of a single charge before trial d[id] not give rise to a realistic likelihood of prosecutorial vindictiveness in this case," and stated that no other facts led it to believe that the government "vindictively amended the charges against the defendant as retalia-

tion for either defendant's exercise of compulsory process or his request for a new trial date."

On April 12, 2011, following a bench trial,[4] the trial court granted Mr. Simms's motion for judgment of acquittal on the unlawful possession charge. The court then considered evidence on the remaining charge and found Mr. Simms guilty of APO "on a resisting or impeding theory."

## II. Standard of Review

The only issue raised by Mr. Simms on appeal is whether the trial court erred in denying his motion to dismiss for vindictive prosecution without acknowledging that the circumstances gave rise to a presumption of vindictiveness that required a response from the government. But before we begin our analysis of this issue, we must address an unresolved question in this jurisdiction: what standard of review to apply.

■ Both parties agree that whether circumstances give rise to a realistic likelihood of prosecutorial vindictiveness, and thus trigger a rebuttable presumption, is a mixed question of law and fact, but they disagree as to the appropriate standard of review. Mr. Simms argues that our review is *de novo* because whether a presumption of prosecutorial vindictiveness is warranted is predominantly a question of law. The government urges us to follow the lead of the United States Court of Appeals for the District of Columbia Circuit and to review both the factual and legal findings regarding vindictiveness for clear error. *See United States v. Meyer,*

3. The defense also noted that it had contacted the government the week prior to obtain the videotape and asked the court to compel disclosure under Superior Court Criminal Rule 16; but the trial court denied this request on the ground that the videotape was not in the government's possession.

4. The government's sole witness at trial was Officer Selby, and her testimony tracked the facts alleged in Officer Pezzat's October 15, 2010 affidavit.

810 F.2d 1242, 1244, *reh'g en banc granted*, *opinion vacated* 816 F.2d 695 (1987), *and opinion reinstated on reconsideration sub nom. Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240 (D.C.Cir.1987).

In *Davis v. United States*, 564 A.2d 31 (D.C.1989) (en banc), we described the different ways courts had historically reviewed mixed questions, observing that they had been either "assigned, sometimes clumsily, either to the 'clearly erroneous' or to the 'de novo' category"; or the mixed question is "unmixed" so that the factual issue is reviewed under the clearly erroneous standard and the legal issue under the *de novo* standard. *Id.* at 36 (quoting *United States v. Felder*, 548 A.2d 57, 61 (D.C. 1988)). We endorsed the "unmixing" approach, thereby "avail[ing] ourselves of the unique operational advantage of the trial judge in making a determination requiring intimate acquaintance with the facts of the particular case as they evolved at trial," but also "maintaining our own role as primary expositor of the law by applying a sufficiently penetrating measure of review to a trial court decision that, in effect, construes a legal right by denying its remedy." *Id.* at 34.

Since *Davis*, this court has established a practice of "unmixing" mixed questions,

and we have consistently applied a dual standard of review when reviewing trial court rulings in criminal cases on issues other than the defendant's guilt.[5] Thus, for example, when we review motions to suppress suggestive identifications,[6] motions to suppress on Fourth Amendment grounds,[7] motions to suppress statements on *Miranda*[8] or involuntariness grounds,[9] conflict of interest claims,[10] *Batson* claims,[11] or ineffective assistance of counsel claims,[12] we defer to the trial court's findings of fact and review its conclusions of law *de novo*.

We see no reason to depart from this established practice when reviewing claims of prosecutorial vindictiveness. In this context as in others, the trial court is in the best position to resolve any factual disputes. But this court is best situated to determine whether a presumption of vindictiveness is warranted "through reasoning, comparison with like cases, and review of a trial court record." *Davis*, 564 A.2d at 36. And this court is in the best position to determine ultimately whether the due process goals for the doctrine of vindictive prosecution, discussed below, are being fulfilled.

The D.C. Circuit's decision in *Meyer* does not sway our analysis. *Meyer* is not

---

5. We review sufficiency of the evidence claims *de novo*. *United States v. Bamiduro*, 718 A.2d 547, 550 (D.C.1998).

6. *Lyons v. United States*, 833 A.2d 481, 485 (D.C.2003).

7. *Maddox v. United States*, 745 A.2d 284, 289 (D.C.2000).

8. *United States v. Turner*, 761 A.2d 845, 850 (D.C.2000).

9. *Castellon v. United States*, 864 A.2d 141, 148 (D.C.2004).

10. *Wages v. United States*, 952 A.2d 952, 960 (D.C.2008).

11. *Robinson v. United States*, 890 A.2d 674, 683 (D.C.2006). *Batson* claims are structurally similar to vindictiveness claims in that a defendant must make out a prima facie case of discriminatory action before the burden shifts to the government to explain why it struck certain prospective jurors. We held in *Robinson* that "whether a defendant has made out a prima facie case is a question of law, namely, whether the voir dire record of the government's peremptory strikes, as shown by the defendant, raised 'the necessary inference of purposeful discrimination.'" *Id.* (internal citations omitted).

12. *Curry v. United States*, 498 A.2d 534, 540 (D.C.1985).

binding on this court. *See M.A.P. v. Ryan*, 285 A.2d 310, 313 (D.C.1971). The clear error standard of review for vindictiveness claims adopted in that case is out of step not only with our case law, but also with case law from other federal circuits. Indeed, the majority of federal circuits that have addressed the standard of review for claims of prosecutorial vindictiveness review the district court's factual findings for clear error and its legal rulings *de novo*. *See, e.g., United States v. Johnson*, 171 F.3d 139, 140 (2d Cir.1999); *United States v. Schoolcraft*, 879 F.2d 64, 67 (3d Cir.1989); *United States v. Johnson*, 91 F.3d 695, 698 (5th Cir.1996); *United States v. Bullis*, 77 F.3d 1553, 1558 (7th Cir.1996); *United States v. Sarracino*, 340 F.3d 1148, 1177 (10th Cir.2003).[13]

Although we conclude that the appropriate standard of review is "mixed," there are no factual disputes in this case to review for clear error. Thus we are left to review *de novo* the trial court's legal ruling that, under the circumstances, Mr. Simms was not entitled to a pretrial presumption of vindictiveness. *See Littlejohn v. United States*, 705 A.2d 1077, 1082 (D.C.1997) (while the nature of the trial court's ruling was typically a mixed question of law and fact that should be "unmixed," because the facts were largely undisputed, the question before the court was predominantly a legal one appropriate for *de novo* review).

### III. Prosecutorial Vindictiveness

### A. Establishing Vindictiveness Pretrial

■ As the Supreme Court acknowledged in *United States v. Goodwin*, 457

U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and this court reaffirmed in *United States v. Mahdi*, 777 A.2d 814 (D.C.2001), "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Id.* (quoting *Goodwin*, 457 U.S. at 372, 102 S.Ct. 2485). Because "[m]otives are complex and difficult to prove," 457 U.S. at 373, 102 S.Ct. 2485, however, "in certain cases in which the prosecution has taken actions against the defendant after the defendant exercised a protected statutory or constitutional right, the courts have presumed an improper vindictive motive which may warrant the dismissal of the prosecution's charge." *Mahdi*, 777 A.2d at 819. As we observed in *Mahdi*, the "rationale for the presumption is not grounded on the proposition that actual retaliatory motivation must inevitably exist, rather ... since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his or her rights, ... due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the prosecutor." *Id.* (quoting *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)) (internal quotation marks omitted). This presumption may be overcome "by objective evidence justifying the prosecutor's action." *Id.*

The Supreme Court's decision in *Goodwin* and this court's decisions in *Shiel v. United States*, 515 A.2d 405 (D.C.1986), and *Mahdi* are the most recent decisions explaining how to analyze claims of prose-

---

13. The only circuit other than the District of Columbia that has consistently reviewed allegations of vindictive prosecution under a clearly erroneous standard is the Sixth Circuit. *See United States v. Sammons*, 918 F.2d 592, 600 (6th Cir.1990). In its brief, the government cites the Ninth Circuit's decision in *United States v. Spiesz*, 689 F.2d 1326, 1329

(9th Cir.1982), which endorsed a clearly erroneous standard of review in this circumstance. In light of the Ninth Circuit's more recent decision in *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir.2007) (whether an indictment should be dismissed on vindictiveness grounds should be reviewed *de novo* ), *Spiesz* no longer appears to be good law.

cutorial vindictiveness raised pretrial. These cases control our analysis.[14]

The question confronted by the Supreme Court in *Goodwin* was whether a defendant raising a claim of prosecutorial vindictiveness pretrial should have the benefit of the presumption of vindictiveness developed in the post-trial context in cases where a defendant had exercised a legal right—the right to challenge a conviction—and then faced additional, more serious charges at a new trial. 457 U.S. at 369–70, 102 S.Ct. 2485. The Court noted that because of the potential "severity of such a presumption—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct"—it had limited the use of a presumption of vindictiveness to "cases in which a reasonable likelihood of vindictiveness exists." *Goodwin*, 457 U.S. at 373, 102 S.Ct. 2485. Although the Court held that it was more difficult pretrial to establish the requisite "reasonable likelihood of vindictiveness," *id.* at 373, 102 S.Ct. 2485, necessary to trigger the presumption, *see id.* at 380–84, 102 S.Ct. 2485, and that Goodwin himself had failed to carry this burden, it did not hold that the presumption was unavailable pretrial. It simply held that the presumption should not be "inflexibly" applied in this context. *Id.* at 381, 102 S.Ct. 2485.

The Court's determination that a presumption of vindictiveness should not be applied pretrial in *Goodwin* was inextricably tied to the facts presented. Goodwin had been charged with several misdemeanors arising out of a traffic stop on the Baltimore–Washington Parkway where he had fled from police, striking an officer with his car. *Id.* at 370, 102 S.Ct. 2485. Goodwin absconded after his arraignment and was not located for three years. *Id.* After he was taken back into custody, his case was initially assigned to a prosecutor who was detailed from the Department of Justice to try misdemeanor cases and who did not have authority to present cases to the grand jury. *Id.* at 370–71, 102 S.Ct. 2485. After Goodwin declined a plea offer and demanded a jury trial, his case was transferred to an Assistant United States Attorney ("AUSA"), who reviewed the case and determined that more serious charges were warranted. *Id.* at 371, 102 S.Ct. 2485. The AUSA obtained a four-count indictment, including one felony count of forcibly assaulting a federal officer. *Id.* After he was convicted, Goodwin alleged that his indictment on new, more serious charges had been motivated by his request for a jury trial and unsuccessfully moved to set aside the verdict on the ground of prosecutorial vindictiveness. *Id.*

Reviewing these facts, the Supreme Court held that Goodwin was not entitled to a rebuttable presumption of vindictiveness. The Court's reasoning was two-fold. First, the Court noted

At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution *may not have crystallized.* In contrast, once a trial

---

14. The government relies heavily on *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), and *Washington v. United States*, 434 A.2d 394 (D.C.1980) (en banc). But *Bordenkircher*, which predates *Goodwin*, addresses the government's discretion to add charges when a defendant declines a plea offer and opts to go to trial. *Goodwin*, 457 U.S. at 378, 102 S.Ct. 2485 ("The outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process."). Where, as here, the record is silent as to whether the government and Mr. Simms ever discussed the possibility of a plea, *Bordenkircher* has little bearing.

As discussed further below, *Washington* is also factually distinguishable, and in any event, no longer appears to accurately state the law in light of *Goodwin* and *Mahdi*.

begins ... it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted.

*Id.* at 381, 102 S.Ct. 2485 (emphasis added). Second, the Court observed that "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Id.* Given that "[t]he invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates," the Court deemed it "unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.*

On the basis of this analysis, the Court found that the "timing of the prosecutor's actions *in this case* suggests that a presumption of prosecutorial vindictiveness is not warranted." *Id.* (emphasis added); *id.* at 382, 102 S.Ct. 2485 (again noting that "a presumption of vindictiveness is not warranted in this case"). In other words, the mere addition of a charge after a defendant was returned to custody after a long hiatus, rejected a plea offer, and opted to exercise his right to a jury trial (prompting reassignment of his case to another prosecutor who had authority to present cases to a grand jury), did not create the requisite "reasonable likelihood of vindictiveness," *id.* at 373, 102 S.Ct. 2485, that would warrant the recognition of a rebuttable presumption. Rather it was to be expected that the prosecution in these circumstances might reassess "the extent of the societal interest in prosecution" and determine that additional charges were warranted. *Id.* at 382, 102 S.Ct. 2485.

This court first had occasion to examine and apply *Goodwin* in *Shiel.* In *Shiel,* demonstrators at the United States Capitol who opted to forgo a trial were permitted to plead guilty to unlawful assembly, whereas protestors who elected to stand trial faced the more serious charge of unlawful entry. 515 A.2d at 410. The latter group challenged their convictions on grounds of prosecutorial vindictiveness. *Id.* We affirmed, relying on *Goodwin,* which we held "stands for the proposition that ... no presumption of vindictiveness arises out of an upward modification of charges before trial. Such a modification, *without more,* proves only an opportunity for vindictiveness, not actual vindictiveness." *Id.* at 411 (emphasis added). Looking at the facts of *Shiel,* we determined that "like the defendant in *Goodwin,* appellant can point to no more evidence of vindictiveness than the fact that a higher charge was instituted after he insisted on a trial." *Id.* We also noted that there were "countervailing indications of a lack of prosecutorial intent to be vindictive," among them, the fact that the demonstrators had been notified in advance that they would be offered an option to avoid an unlawful entry charge. *Id.*

Most recently, in *United States v. Mahdi,* we took the "opportunity to state the basis for the doctrine of vindictive prosecution and to clarify the procedure the court should employ to determine whether a defendant is entitled to relief" in the pretrial context. 777 A.2d at 818. Referring back to pre-*Goodwin* precedent, we "h[e]ld that the test laid out in *Schiller,*[15] which refined *Wynn,*[16] most clearly lays out the appro-

---

15. *United States v. Schiller,* 424 A.2d 51 (D.C. 1980).

16. *Wynn v. United States,* 386 A.2d 695 (D.C. 1978). The government challenges Mr.

Simms's reliance on *Schiller* and *Wynn* and asks us to hold that these decisions are no longer good law in light of *Goodwin.* But we already reconciled *Schiller* and *Wynn* with

priate test for evaluating prosecutorial vindictiveness":

> The appropriate procedure is that, [t]he trial court should, upon motion, review the accumulation of circumstances of record and decide, without more, as a threshold matter whether the allegations as to a prosecutor's actions give rise to a realistic likelihood of prosecutorial vindictiveness. If ... the examination results in an affirmative finding, the obligation is then on the government to answer or explain the allegations.

*Id.* at 820 (internal quotation marks omitted). In determining whether the government has met its burden to rebut a presumption of vindictiveness, we said that the trial court should consider "the nature of the case; status of the case, including the fact that a prosecutor should have broader leeway to add charges before an initial trial than in a case where a defendant is being a tried a second time; the nature of the right involved as to which vindictiveness is alleged; and the nature of the harm involved, including the length of potential incarceration." *Id.* at 820–21.

Applying this analysis in *Mahdi,* we held that a pretrial presumption of vindictiveness was warranted where, after a drug charge against the defendant was dismissed and after the defendant filed a civil suit against the police, the government rebrought the previously dismissed drug charge with a newly added simple assault charge. *Id.* at 821. We ultimately concluded, however, that the claim of vindictiveness failed because the "government provided evidence, credited by the trial court, that aptly rebutted the presumption and showed that there was no actual prosecutorial vindictiveness."[17] *Id.*

We take from *Goodwin, Shiel,* and *Mahdi* the following. First, a presumption of vindictiveness is available pretrial. Second, although the fluidity of pretrial proceedings makes it more difficult as a practical matter to demonstrate that a presumption is warranted pretrial, the actual burden to obtain the presumption remains the low hurdle of demonstrating a reasonable likelihood of vindictiveness.[18] This hurdle can be overcome with a demonstration of "an accumulation of circumstances"; no direct evidence of retaliatory intent is required. Third, where, as here, the factors in *Goodwin* motivating defer-

---

*Goodwin* in *Mahdi,* 777 A.2d at 821, and we rely on *Mahdi* here.

**17.** In *Mahdi,* the government presented testimony that the simple assault charge was not included in the original information due to an administrative error and that the decision to rebring the drug charge with the simple assault charge was made before the civil suit was filed. 777 A.2d at 817. Whether the government needs to put witnesses on at a hearing to rebut a presumption of vindictiveness or whether it can rebut a presumption of vindictiveness with a proffer to the court, will depend on the facts of the case.

**18.** Relying on *United States v. Safavian,* 649 F.3d 688, 692 (D.C.Cir.2011), the government asserts that the "reasonable likelihood standard" requires a showing that the "prosecutor's actions were more likely than not attributable to vindictiveness." We decline to equate our reasonable likelihood standard with the more burdensome preponderance of the evidence standard. Indeed, although the D.C. Circuit in *Safavian* cites to the Supreme Court's decision in *Alabama v. Smith,* 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), as support for this standard, more recent Supreme Court authority recognizes the difference between a reasonable likelihood, or even a reasonable probability, and a preponderance of the evidence standard. *See, e.g., Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) ("reasonable likelihood" does not require proof that a fact is more likely than not); *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (distinguishing a "reasonable probability" from a more-likely-than-not standard).

ence to the prosecution pretrial are absent, the reasonable likelihood standard will not be out of reach.

## B. Analysis

■ Under *Goodwin, Shiel,* and *Mahdi,* Mr. Simms was entitled to a presumption of vindictiveness upon a showing that there was an accumulation of circumstances giving rise to a reasonable likelihood of vindictive action by the government. We conclude that there was such an accumulation of circumstances in this case. Accordingly, the court should have afforded Mr. Simms the benefit of a rebuttable presumption and directed the government to respond to his motion and justify its actions.

First, the government knew from the date of Mr. Simms's arrest that there were facts potentially supporting a charge of assault and resisting arrest. These facts were in the sworn affidavit of Officer Pezzat, dated October 15, 2010. Indeed, Mr. Simms was initially charged with failure to obey an order, but the OAG decided to dismiss this charge. Relatedly, it appears the government developed no new facts between Mr. Simms's arrest on October 15, 2010, and the amendment of the information. At Mr. Simms's bench trial on April 12, 2011, the government relied exclusively on Officer Selby's testimony to establish APO; her account of the incident conformed to Officer Pezzat's affidavit.

Second, the timing of the amendment is suspect in that the government did not seek to amend the information in the almost four months prior to the first scheduled trial date on January 31, 2011; but after Mr. Simms sought to enforce his subpoena and trial was continued, the government acted swiftly to add the APO charge on February 4, 2011.

Third, there is no indication in the record that the government ever offered Mr. Simms a plea, much less that the amendment was the reasonably anticipated outcome of failed plea negotiations. *Cf. Bordenkircher,* 434 U.S. at 357, 98 S.Ct. 663. Rather, the record reflects that Mr. Simms announced his intention to go to trial on November 4, 2010, well before the amendment of the information.

Against this backdrop, there is one additional fact that tips the balance for us: the government's announcement on January 31, 2011, that it was ready to try its case. If there is a moment when one can say that the government's thoughts about its case have "crystallized," *Goodwin,* 457 U.S. at 381, 102 S.Ct. 2485, it must be the one where the government announces to the court that it is ready to begin trial and present its evidence to the fact-finder. Moreover, the government's announcement that it is ready to try a case is a clear signal that it believes that the back-and-forth of pretrial litigation is over. In other words, the very reasons the Supreme Court determined that the application of a presumption of vindictiveness should be limited pretrial, do not pertain here.[19]

19. The dissent analyzes this case as if it falls squarely within a pretrial framework and does not discuss the prosecution's declaration of readiness until its penultimate paragraph. Without this announcement of readiness, we agree, this would be a very different case. But we disagree that this announcement is fairly minimized or "so opaque in meaning." See Dissent at 502. The dissent asserts that the government "sometimes announces ready when it is *not* ready, or at least is not as ready as it wishes to be." See Dissent at 501. First, there is nothing in this record to suggest that the government was not ready to try this simple case on January 31 and that it was playing "readiness roulette" in the hopes of getting the benefit of a continuance prompted by the defense. Second, whether the government is "as ready as it wishes to be" is beside the point. Rather, announcement of "ready"

The concern we expressed in *Shiel* about creating incentives for prosecutors to over-charge cases at the outset, 515 A.2d at 411, likewise has no application. We create no incentive to overcharge where we defer to the government's own assessment of the readiness of its case. Before the government announces this decision, it retains broad discretion to modify its case and augment the charges against a defendant. Indeed, this is precisely what happened in our pre-*Goodwin* decision in *Washington*, 434 A.2d at 395, where the prosecution did *not* announce it was ready but instead sought a continuance on the day of trial to gain more time to reflect about how the case should properly be charged.[20]

The government argues that Mr. Simms's vindictiveness claim fails under *Goodwin* because it is based on "a mere sequence of pretrial events," namely, the exercise of a statutory or constitutional right followed by an upward modification of charges. But for the reasons detailed above, we see this case differently.

The government also argues that continuances on the date of trial are common-place, and that the events of January 31, 2011, should simply be considered a continuation of the normal lead-up to trial. But this argument misses the mark. The relevant inquiry is whether it is commonplace for the government to announce ready for trial and then, after the defense exercises a right and is granted a continuance, to bring additional charges. When asked this question at oral argument, the government could not say that such an upward modification of charges is commonplace. In the absence of such a representation, we presume it is not. The government's post-ready addition of a charge is not conclusive proof of vindictiveness (Mr. Simms does not bear the burden of proving vindictiveness at this stage). But in combination with the other factors detailed above, it

---

is the government's declaration that it wants the case to go forward, and that its thoughts about the case are "crystallized" *enough* (any unreadiness notwithstanding) that it is willing to take the case to trial. This expressed desire to take a case to trial must be taken at face value. This court would chart a dangerous course if we were to allow for the possibility that when the government says one thing—"ready"—it can be presumed to mean the converse.

**20.** Although *Washington* was correctly decided in light of *Goodwin* and *Mahdi*, we note that its conservative articulation of the vindictive prosecution doctrine has been effectively overruled. *See Kleinbart v. United States*, 604 A.2d 861, 870 (D.C.1992) ("When intervening constitutional rulings necessitate a change in prior law, a division of this court is empowered to recognize that earlier decisions no longer have force.").

In *Washington* we observed that

The Supreme Court cases dealing with vindictive prosecution have recognized two distinct situations in which the appearance

of vindictiveness may require an inquiry and judicial intervention. The first is where the prosecutive decision is based on discriminatory grounds of race, religion, national origin, or other impermissible classification.... The other situation is where the accused is treated more harshly on re-trial because he has exercised a conferred right to that new trial.

434 A.2d at 396; *see also id.* (denying the pretrial vindictiveness claim because "[t]his case does not fall within either category"). This restricted view of vindictiveness claims was contemporaneously challenged in the concurrence:

The second category [of vindictiveness claims], ... is not limited to situations in which the accused has been brought to trial for a second time. The filing of additional criminal charges before the first trial, in some circumstances, may manifest sufficient vindictiveness to warrant judicial intervention.

*Id.* at 397 (Ferren, J., concurring). In light of the Supreme Court's decision in *Goodwin*, it is clear that this concurrence accurately states the law.

was a sufficient foundation for the presumption.

Finally, the government argues that Mr. Simms never alleged that the individual prosecutor had a "personal stake in the outcome of the litigation" or that he possessed an animus toward defendant. Of course it is precisely because this would be virtually impossible for any defendant to prove at the outset that the Supreme Court created a presumption, *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485. Moreover, the government's "personal stake" requirement unduly constricts the inquiry of prosecutorial vindictiveness, which is not limited to the motives of an individual

prosecutor and may focus on the motivations of the government as an institution. *Cf. Mahdi,* 777 A.2d at 821 (presumption of vindictiveness was rebutted where "the government's decision" to recharge the case was adequately explained).[21]

## IV. Conclusion

Having determined that the trial court erred by failing to give Mr. Simms the benefit of a pretrial presumption of vindictiveness, we conclude that a remand is appropriate. On remand, the government will be given an opportunity to provide a benign explanation for its decision to add the APO charge after it announced ready

**21.** Making arguments never raised by the government on appeal, the dissent asserts that the record "suggests" at least two possible "explanations" that "preclude" a reasonable likelihood of vindictiveness in this case: (1) a new prosecutor became involved and reassessed the case and (2) the government reassessed the case after the defense raised the issue of the missing videotape but before the January 31 trial date. See Dissent at 496. Even if these "suggest[ed]" "explanations" were not, as the dissent concedes, entirely "speculative," *id.,* these alternate possibilities do not defeat a rebuttable presumption of vindictiveness in this case. Nor is it our place on appellate review to make fact-based arguments that are properly articulated (and substantiated) by the government on remand.

There is no evidence in the current record that a new prosecutor "became involved" in the case some time before the information was amended on February 4, and then "reassess[ed] the appropriate extent of prosecution." See Dissent at 500, 502. The dissent notes that the defense served its motion to dismiss for vindictive prosecution on a new prosecutor; but this motion was not filed until February 28, 2011. Likewise the record is devoid of any indication that the government reassessed its case before the January 31 trial date; indeed, given the fact that the government announced "ready" to try the case, the record contradicts such a supposition.

In any event, *Mahdi* does not set forth a balancing test where the trial court at the outset weighs competing evidence and de-

cides which scenario—vindictive or benign action—is more likely. *Mahdi* instead directs an examination of the accumulation of circumstances to determine if there is a reasonable likelihood of vindictiveness (which permits the co-existence of a competing reasonable likelihood of benign action). *Cf. Johnson v. California,* 545 U.S. 162, 170, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (noting in the analogous context of a *Batson* challenge, making out a prima facie case of discriminatory strikes, is not supposed to be "so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination.") If this low reasonable-likelihood threshold is met, much as in a *Batson* inquiry, the burden shifts to the government to rebut the presumption. *Cf. Little v. United States,* 613 A.2d 880, 887–88 (D.C.1992) ("Where the [prima facie case] issue is close [in a *Batson* challenge], 'conservation of judicial resources might well justify inquiry of the government attorney as to the reasons for making a strike,' especially since the prosecutor's burden in rebutting a prima facie case is neither onerous nor time-consuming.") (citations omitted).

In short, the dissent may well identify the grounds on which the government will seek to rebut a presumption of vindictiveness, but this court may not at this juncture, on this record, avoid remand by rebutting the presumption for the government.

for trial on the possession of marijuana charge. Failing that, the trial court should vacate the APO conviction and dismiss this charge.

*So ordered.*

THOMPSON, Associate Judge, dissenting:

It is clear under our case law that a presumption of vindictiveness can arise in the pretrial context where there is an appropriate "accumulation of circumstances." *United States v. Mahdi,* 777 A.2d 814, 820 (D.C.2001). I cannot agree, however, that the record in this case presents an accumulation of circumstances that warrants such a presumption—a presumption that the government retaliated against Mr. Simms for exercising a protected right. Nor, in my view, did the sequence of events in this case create an appearance of vindictiveness that should have triggered a requirement that the government explain why it exercised its prosecutorial discretion to add a charge of assault on a police officer ("APO").

**A.**

I begin by setting out a somewhat fuller description of the record in this case than is contained in the majority opinion. A bench trial on the marijuana possession charge against Mr. Simms was scheduled to begin on January 31, 2011. The tape of the proceedings on that day reveals that, after the case was called, the court asked counsel for the government whether the government was ready for trial, and counsel for the government responded that the government was "ready." Mr. Simms's counsel responded that the defense had some pretrial matters. The first was that defense counsel had not received a copy of the DEA–7 form (containing the laboratory report on the substance contained in the three bags that a police officer claimed to have seen Mr. Simms toss into a tree box in the 1100 block of Vermont Avenue). The court passed the case so that Mr. Simms's counsel could look at the copy supplied to him in open court. When the case was recalled, Mr. Simms's counsel said that the defense would waive as to the DEA–7, but that there was an additional issue of enforcement of a subpoena *duces tecum* that counsel had served on an individual at the Department of Homeland Services ("DHS") building at 1120 Vermont Avenue on December 15, 2010, in an effort to obtain security videotapes from that location. The individual who was served had informed defense counsel that he was authorized to accept service of the subpoena *duces tecum* and had promised to forward it to DHS's "legal department" along with defense counsel's contact information. Defense counsel told the court that despite numerous phone calls and emails to DHS, he had received no response. He also told the court that "last week," he had contacted counsel for the government and made a Super. Ct.Crim. R. 16 request for the DHS videotapes. The court responded that it would look at the subpoena *duces tecum* and consider enforcing it, but that the court did not believe the videotapes were in the government's possession for Rule 16 purposes.

The court then inquired as to whether government counsel had any information about the videotapes. Government counsel responded that the government was made aware of the outstanding subpoena to DHS "last week" and had attempted to contact someone at that agency without success. He told the court that the government was willing to pursue efforts to contact the agency. After passing the case again and then resuming the proceedings, the court directed the government to try to find out what it could about DHS's position. The court said that it would not try the case on that day, but would wait to

see whether it needed to enforce the subpoena *duces tecum.* The court—appearing to understand the government counsel who was present was not the prosecutor assigned to the case—then asked government counsel which prosecutor was assigned to the case. Government counsel responded that the assigned prosecutor was Marvin Lett[1] and said that he would speak with Mr. Lett and make sure that the process of contacting DHS was expedited. The court set February 10, 2011, as the date for a status hearing on the matter.

At the February 10 status hearing, the court asked the parties where matters stood with respect to the issue of the defense subpoena *duces tecum.* The tape of that proceeding reveals that defense counsel reported to the court that Mr. Lett had sent him an email stating that he (Mr. Lett) had contacted the individual who accepted service for DHS, who informed him that the videotape(s) for the date in question had been deleted. Defense counsel told the court that in light of that, there did not appear to be anything more that could be done with respect to the subpoena *duces tecum* and that the defense was requesting a new trial date. The trial court again stated that the videotape apparently had never come into the possession of the government and that there was no Rule 16 issue. Government counsel then told the court that before a trial date was set, the government wished to amend the information to include an APO charge. The court asked whether the additional charge arose out of the same nucleus of facts as the marijuana possession charge, whether the defense was aware of the potential for the additional allegation, and whether the defense had a need for additional discovery. Defense counsel re-

sponded that the court could go ahead and set a trial date. Thereafter, Mr. Simms was arraigned on the APO charge. The courtroom clerk asked whether defense counsel and Mr. Simms had been served with a copy of the amended information. Defense counsel responded that they had been served with the amended complaint and said that they would waive the formal reading of the complaint and enter a "not guilty" plea. The court then set a trial date of April 12, 2011, and afforded the defense two weeks within which to file any motions relating to the additional charge.

The paper record reveals that on February 4, 2011, the amended information was signed by an Assistant United States Attorney (someone other than Mr. Lett, and someone other than the person who had signed the original information). On February 24, 2011, the defense filed a motion for an extension of time to file pretrial motions. It served that motion on Assistant United States Attorney Sarita Frattaroli (whose name does not appear on any of the previous documents in the record). The defense filed its "Motion to Dismiss Information for Vindictive Prosecution" on February 28, 2011. The trial court denied the motion in an order dated April 7, 2011, explaining that it had "reviewed the circumstances of this case and ... decided that the prosecutor's actions do not give rise to a realistic likelihood of prosecutorial vindictiveness."

During trial on April 12, 2011, the government called a single witness, Officer Kimberly Selby. The DEA-7 report was admitted without a chemist having testified, and without objection from the defense. During cross-examination by defense counsel, Officer Selby testified that she believed she had spoken with only one prosecutor—"one female prosecutor"—

---

1. The paper record confirms that Mr. Lett was the prosecutor with whom the defense

had corresponded repeatedly prior to the January 31 scheduled trial date.

about the case prior to April 12. She also testified that on April 12, she spoke with the (male) prosecutor who tried the case "just to go over the stuff here." The record does not contain the name of the prosecutor who tried the case on April 12.

**B.**

As the majority opinion explains, this courts review of whether a presumption of prosecutorial vindictiveness was warranted on the foregoing undisputed facts is *de novo*. In conducting that *de novo* review, I have borne in mind the following.

The Supreme Court has characterized a presumption of vindictiveness as a "sever[e]" presumption that courts should be "cautious" about applying in a pretrial setting. *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("Given the severity of such a presumption, ... which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct[,] the Court has [presumed an improper vindictive motive] only in cases in which a reasonable likelihood of vindictiveness exists."); *see also id.* at 381, 102 S.Ct. 2485 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting."). Caution is warranted, the Court explained, because "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution" of a defendant. *Id.* at 382, 102 S.Ct. 2485. The Court recognized that an initial decision by a prosecutor as to what offense(s) to charge "should not freeze future conduct," and that "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.*

The Court instructed in *Goodwin* that the mere fact that the government has added a charge after the defendant has asserted a protected right does not give rise to a reasonable likelihood of vindictiveness; rather, "[t]he nature of the right asserted" must be taken into account. *Id.* If the right asserted is one that defendants routinely assert pretrial, it is difficult to justify a presumption that a subsequent additional charge reflects vindictiveness. *Id.* at 382, 102 S.Ct. 2485 ("The nature of the right asserted by [Goodwin—i.e., his demand for a jury trial] confirms that a presumption of vindictiveness is not warranted in this case."). As the Supreme Court explained,

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.

*Id.* at 381, 102 S.Ct. 2485. A presumption of vindictiveness may be warranted where the prosecution has added a charge after the defendant, having asserted a protected right, thereby caused "duplicative expenditures of prosecutorial resources before a final judgment may be obtained," or caused the government to have to "do over what it thought it had already done correctly," or required the government to do something against which there is an "institutional bias." *Id.* at 383, 102 S.Ct. 2485 (footnote, citation, and internal quotation marks omitted). But the mere fact that the defendant's invocation of his right has occasioned some additional burden for the government is not enough to justify a pre-

sumption that the additional charge was vindictive. *See id.* at 383, 102 S.Ct. 2485 (explaining that even though "[t]o be sure, a jury trial is more burdensome than a bench trial," the "distinction between a bench trial and a jury trial does not compel a special presumption of prosecutorial vindictiveness whenever additional charges are brought after a jury is demanded," observing that a prosecutor has "no personal stake" in a bench trial, and reasoning that therefore "[t]he possibility that a prosecutor would respond to a defendants pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted") (citation and internal quotation marks omitted).

In *Mahdi,* this court reaffirmed the procedure that a trial court should follow when presented with a claim of prosecutorial vindictiveness:

> The appropriate procedure is that ... [t]he trial court should ... review the accumulation of circumstances of record and decide, without more, as a threshold matter whether the allegations as to a prosecutor's actions give rise to a realistic likelihood of prosecutorial vindictiveness. If this examination results in a negative finding, the trial court should go no further, but need only enter the appropriate ruling. If, however, the examination results in an affirmative finding, the obligation is then on the government to answer or explain the allegations.

777 A.2d at 820 (citation and internal quotation marks omitted). In *Mahdi,* we also reaffirmed that "the rule against prosecutorial vindictiveness requires the elimination of even the appearance of vin-

dictiveness from the operation of the legal process." *Id.* at 820 (quoting *United States v. Schiller,* 424 A.2d 51, 56 (D.C. 1980) (internal quotation marks omitted)).

### C.

I now turn to an assessment of Mr. Simms's motion, and of the record in this case, in light of the foregoing principles.

In his memorandum in support of his "Motion to Dismiss Information for Vindictive Prosecution," Mr. Simms argued that:

> On January 31, 2011, the original trial date, the government had expended all of the resources that would be included in preparing for a single-day misdemeanor bench trial: the prosecutor had spent time and effort readying himself and his witnesses for trial, and the government had expended financial resources to secure the testimony of its police officer and chemist witnesses. The defendant's request that the Court enforce the subpoena for the security camera footage caused the trial to be continued, and "exacted from the prosecution the effort and expense of a new trial": in all likelihood, a new prosecutor would have to spend time and effort preparing for the trial, and the government would have to spend "duplicative" financial resources to secure the testimony of its police and chemist witnesses.[2] Because "the prosecution has taken actions against the defendant after the defendant exercised a protected statutory or constitutional right," the Court "should presume[ ] an improper vindictive motive."[3]

Memorandum of Points and Authorities in Support of Motion to Dismiss Information

---

2. Citing *Schiller,* 424 A.2d at 57.

3. Citing *Mahdi,* 777 A.2d at 819.

for Vindictive Prosecution, at 6–7.[4]

My first observation is that while addition of the APO charge did follow Mr. Simms's exercise of his right to ask the court to "enforce the subpoena for the security camera footage" and also followed his (January 26, 2011) request to the government to produce the DHS videotape pursuant to Rule 16, I see no basis for meaningfully distinguishing either of these pretrial requests from what the Supreme Court recognized in *Goodwin* as "routine[ ] ... pretrial motions" to "obtain access to government files." 457 U.S. at 381, 102 S.Ct. 2485. Without more, "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.*

An additional important fact is that the trial was indeed a "single-day misdemeanor bench trial." Thus, this was not a matter in which the prosecution had been required to prepare for a possible "challenge [to] the selection of the [jury] venire," or to prepare witnesses and arguments "more carefully to avoid the danger of a mistrial." *Goodwin*, 457 U.S. at 383, 102 S.Ct. 2485. This surely minimized any burden the assigned prosecutor had been required to undertake in the days before the trial was continued as a result of Mr. Simms's efforts to enforce the subpoena *duces tecum*—meaning that the prosecutor had very little "personal stake" in going to trial on January 31.

The trial also was one in which a single witness testified for the government. And, importantly, it appears that the government had reason—both at the time the trial court continued the January 31 scheduled trial date, and on February 10 when the government moved to amend the information to add the APO charge—to anticipate that the trial would be just that. When the court announced toward the close of the proceedings on January 31 that it would continue the trial date, the defense had already said that it would "waive" as to the DEA–7 (and, as described above, the DEA–7 report was admitted at trial without testimony from the chemist and without any defense objection). Thus, contrary to Mr. Simms's assertion in his motion that the government incurred the burden of spending duplicative financial resources to "secure the testimony of its ... chemist witnesses," the government knew on January 31 that it would not be required to secure the presence of the chemist at the rescheduled trial.

Further, although Mr. Simms also asserted in his motion that "the prosecutor had spent time and effort readying himself and his witnesses for trial" on January 31, several things in the record strongly suggest that this investment of time was minimal. First, the assigned prosecutor—who, the record shows, was not present at any of the three times when the case was called on January 31—had some reason to

4. Mr. Simms's motion also asserted that "[a]t the status conference on February 10, 2011, defense asked for a new trial date. The government then amended the information against Mr. Simms to include an additional charge of assault on a police officer." To the extent that the motion implied that the government determined to add the APO charge only after Mr. Simms asserted on February 10 his right to go to trial, that implication does not withstand scrutiny. As described above, an amended information was signed on Feb- ruary 4, 2011 (i.e., before the government knew whether Mr. Simms would insist on going to trial), and the defense had been served with a copy of the amended information before defense counsel asked the court on February 10 to set a new trial date. Moreover, a presumption of vindictiveness does not arise where a defendant "can point to no more evidence of vindictiveness than the fact that a higher charge was instituted after he insisted on a trial." *Shiel v. United States*, 515 A.2d 405, 411 (D.C.1986).

expect that the trial might not go forward on January 31: the fact, which he had learned the week before, that defense counsel was pursuing efforts to obtain the DHS videotape(s). Second, as recounted above, Officer Selby testified at trial that she believed that, prior to April 12, she had spoken about the case with only one, female prosecutor (possibly Sarita Frattaroli, who was involved with the case by sometime in February) and had spoken with the prosecutor who actually tried the case only briefly on April 12, the day of trial. Third, the record indicates that Officer Pezzat, the second police officer who was involved in Mr. Simms's arrest, was deployed in the military at the time of trial (and perhaps for some time before trial). The record does not reveal whether Officer Pezzat was prepared as a witness at any time, but Officer Selby's testimony (that the female prosecutor with whom she spoke "asked if Officer Pazat [*sic*] was going to be coming") suggests that Officer Pezzat was not present when Officer Selby spoke with the female prosecutor. Moreover, in her arrest affidavit, Officer Pezzat stated that it was Officer Selby who saw Mr. Simms toss the bags of marijuana into the tree box. This suggests that the prosecutor would have regarded Officer Selby as the primary witness for the government. Thus, nothing in the record bears out the claim that the prosecution had to repeat any substantial "time and effort readying [it]self and [its] witnesses for trial" as a result of Mr. Simms's assertion of his rights.

In short, the facts do not suggest a realistic likelihood of vindictiveness (or even a motive for vindictiveness) by the prosecution. Nor, in my view, did they create an appearance of vindictiveness. This case is unlike *Wynn v. United States,* 386 A.2d 695 (D.C.1978), in which this court found an appearance of vindictiveness where, "[f]or no apparent reason," the government added new charges after the defendant successfully moved for an advance of the trial date, and the trial court then dismissed the case without prejudice when the government was unable to produce a witness on short notice. *Id.* at 697–98. This case also is unlike *Mahdi,* in which we agreed with the trial court that there was an appearance of vindictiveness and a realistic likelihood of vindictiveness where the government added a charge after the criminal case against Mahdi was dismissed without prejudice for want of prosecution, and Mahdi then filed a civil suit against the police officers based on their conduct on the day of Mahdi's arrest. *See* 777 A.2d at 821. Here, in contrast to the facts of those cases, the government had not been on the losing side of a motion to dismiss, a motion to advance the trial date, or any other motion.[5] Government

---

5. In *Schiller,* this court found that the trial court correctly made a "threshold determination" that the government's re-indictment of seventeen defendants to add new charges after they had demanded consolidation of the indictments against them "resulted in the appearance of vindictiveness on the part of the government." 424 A.2d at 57. However, *Schiller* was decided two years before the Supreme Court, in *Goodwin,* counseled "cautio[n] before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." 457 U.S. at 381, 102 S.Ct. 2485. I do not understand the appearance-of-vindictiveness determination in *Schiller* to

be one of the "main principles contained in" the case that (as we said in *Mahdi*) is "consistent with Supreme Court decisions on prosecutorial vindictiveness" in the pretrial setting. *Mahdi,* 777 A.2d at 820. This is especially the case since the *Schiller* court recognized that "a request by defendants to be tried together normally thwarts no prosecutorial purpose and, in general, is unlikely to invite retaliation" and that "the nature of the assertion by appellees in itself makes less likely that vindictiveness underlaid the government's decision to seek reindictment," 424 A.2d at 57— observations that, per *Goodwin,* dictate

counsel made no objection when the trial court said that it would continue the trial date. Further, as the trial court observed, "it appears that the government was compliant, albeit unsuccessful, with the defendants compulsory process request." The court's impression is supported by the statement, by government counsel who was present on January 31, that the government was "willing" to try to contact DHS again about the videotape. I do not suggest that this statement must be accepted uncritically, at face value, but the statement certainly does not support an assumption or create an appearance that Mr. Simms's request for enforcement of his subpoena *duces tecum* "irritated the government to such an extent that the government thought retaliatory measures appropriate." [6] *United States v. Pipito*, 861 F.2d 1006, 1010 (7th Cir.1987). Observing that "continuances on the day of trial are routine," the trial court concluded—correctly, in my view—that there was no basis for assuming "that the government took special offense to the continuance in this case." In addition, during the January 31 proceeding, the trial judge promptly rejected the notion that the government had an obligation under Rule 16 to produce the videotapes the defense sought. Thus, the government would not have thought it would be facing a Rule 16 sanction.

Instead of vindictiveness, the record readily suggests other reasons why the prosecution might have revisited the October 15, 2010, arrest affidavit and focused on the portions that provided the basis for the APO charge. First, although it is not clear from the record precisely when Ms. Frattaroli became involved in the case, one explanation for revisiting the affidavit, and for re-assessing the appropriate extent of prosecution, is the involvement of a new prosecutor—i.e., "a new approach by a new prosecutor." *Williams v. Bartow*, 481 F.3d 492, 501 (7th Cir.2007). Second (and perhaps less speculatively), the defense's January 26 letter invoking Rule 16 with respect to the DHS/1100 block of Vermont Avenue videotape gave the government cause to revisit the arrest affidavit to focus on what conduct took place on Vermont Avenue in the vicinity of the DHS cameras, and what might have occurred beyond their surveillance area.[7] A review of the affidavit with that inquiry in mind would almost certainly have drawn attention to Mr. Simms's having "struggle[d] with" the officers and having "resist[ed]" them before they were able to place him in handcuffs when they caught up with him on Thomas Circle.[8] If, having newly focused on the facts supporting the APO charge and reassessed "the extent of the societal interest in prosecution,"[9] the gov-

---

against a presumption of vindictiveness. *See* 457 U.S. at 381, 102 S.Ct. 2485.

6. If the assigned prosecutor, who we can assume was a telephone call away, was irritated upon hearing that the court had mentioned the possibility of enforcing the subpoena *duces tecum* or that stand-in government counsel had expressed a willingness to help with obtaining the DHS videotape(s), I would think he would have made an appearance to lodge his objections or asked stand-in counsel to voice them.

7. Mr. Simms is incorrect in asserting that "[n]othing occurred between [October 15, the day of his arrest] and January 31," when he appeared for trial "and insisted on enforcement of the subpoena." The January 26 letter invoking Rule 16 "occurred" during that period.

8. The arrest affidavit recounts that after the officers ordered Mr. Simms to stop while he was still on Vermont Avenue, he "began to walk into the unit block of Thomas Cir NW," causing the officers to return to their police vehicle to go after him. .

9. *Goodwin*, 457 U.S. at 382, 102 S.Ct. 2485.

ernment determined to add the APO charge, that does not suggest vindictiveness, but instead correction of an oversight. The majority opinion supposes that the government "acted swiftly to add the APO charge" after the January 31 trial date was continued, but there is no reason to assume that the February 4 amended information was the culmination of re-thinking that occurred only *after* January 31.[10]

It may be that neither of the explanations suggested by the record is the correct one, but, I believe, the fact that the record readily suggests them precludes any appearance of vindictiveness. My colleagues accuse me of attempting to rebut the presumption of vindictiveness for the government, *ante* at 493, but I have done no such thing; what I have done instead is explain why, under the principles established by *Goodwin*, no presumption arises on the facts of this case. (My colleagues are correct that I have suggested particular explanations "never raised by the government"; but if the government had provided explanations, it would have done

precisely what it argues it should not be required to do on this record.)

Finally, I focus on what my colleagues in the majority cite as the fact that "tips the balance" in favor of a presumption of vindictiveness: the government's announcement that it was "ready" for trial on January 31.[11] I believe my colleagues accord far too much significance to the government's response that it was "ready" for trial. The case law makes plain that the government (like the defense) sometimes announces ready when it is *not* ready, or at least is not as ready as it wishes to be. *See, e.g., Lemon v. United States,* 564 A.2d 1368, 1377 n. 17 (D.C.1989) (finding the government's announcement of readiness "unpersuasive under [the] circumstances").[12] I read the government's statement that it was ready for trial as a representation by which it took on the obligation to go forward without objection (and without a new charge or anything else of which due notice had not been given) if the court determined to go forward (something the government apparently felt it could do in light of what seems to have

10. If, between January 26 and January 31, the government had re-assessed the charges in light of the January 26 letter and did contemplate adding the APO charge, it likely knew that it would not be permitted to do so on the eve of trial without seeking a continuance. Yet, in light of speedy-trial considerations (and the possibility of dismissal for want of prosecution), the government has a disincentive to seek a continuance and thus to be the party to whom a trial delay is charged. Once the court *sua sponte* continued the trial, however, the government had time to add a charge without that disincentive.

11. The majority opinion also mentions the decision of the Office of the Attorney General to "no-paper" the failure-to-obey charge for which Mr. Simms was arrested, as if that fact meant that a decision had already been made not to pursue an APO charge. The failure-to-obey citation, which I presume was premised on Mr. Simms's failure to stop when the offi-

cers directed him to (and for which I presume the basis was 18 DCMR 2000.2 ("No person shall fail or refuse to comply with any lawful order or direction of any police officer ....")), is different from the APO charge, which was based on Mr. Simms's actively resisting the officers' attempts to arrest and handcuff him.

12. *Cf. Spencer v. United States,* 748 A.2d 940, 943 (D.C.2000) (explaining that after defense counsel announced that he was ready, he also told the court that he wanted to call a witness who apparently had absconded, and he could not offer a substantial reason for not having sought a continuance); *Trice v. Texas,* 1986 Tex.App. LEXIS 12253, *4–5 (Tex.App. Houston 14th Dist., Feb. 27, 1986) (recounting that, after the State announced "ready," it issued a third superseding indictment that "added a different mode of committing the [charged] offense.").

been its sense that not much witness-preparation time was needed). I do not think we can fairly read the government's "ready" statement as denoting that the government desired or expected to go forward, or as indicating that the government was as prepared as it wished to be.[13] Nor do I think we should pretend that every assertion of "ready" means that the government's position is fully crystallized.

To summarize, in my view, Mr. Simms's request to the court to enforce his subpoena *duces tecum* and the resulting continuance were so routine; continuance of the trial imposed so minimal an additional burden on the government; the government's announcement of "ready" was so opaque in meaning; and the record is so suggestive of benign reasons why the government might have re-analyzed the arrest affidavit and re-assessed the appropriate extent of prosecution, that I cannot conscientiously agree with my colleagues that a presumption of vindictiveness—which *Goodwin* cautioned is a "sever[e]" presumption—is justified. Quite the contrary, the possibility that the prosecutor responded to Mr. Simms's requests "by bringing charges not in the public interest that could be explained only as a penalty" is "so unlikely that a presumption of vindictiveness certainly is not warranted." *Goodwin*, 457 U.S. at 384, 102 S.Ct. 2485. Accordingly, I respectfully dissent.

---

**13.** *Cf. Wingate v. United States*, 669 A.2d 1275, 1281–82 (D.C.1995) (describing counsel's explanation that when he announced ready, "[t]here were certainly some things that I would have preferred to have, but I believe that it was nothing necessarily uncommon or untoward in terms of ordinary representation").